## POPE *v.* MEADOW SPRING DISTILLING CO.

### RYAN *v.* SAME.

*(Circuit Court, E. D. Wisconsin.* April 12, 1884.)

1. **AGENCY—CONCEALED AGENCY—RESPONSIBILITY OF PRINCIPAL.**

    A party selling goods to another and taking his individual acceptance therefor, may, upon the discovery that the latter was really acting in the interest of and under authority from a third party, hold that third party responsible for payment.

2. **SAME — ACT OF AGENCY ESTABLISHED BY SUBSEQUENT ACCEPTANCE OF THE PROPERTY PURCHASED.**

    A party who, without the authority of another, purchases goods for him, which the other, knowing the purchase has been so made, accepts, becomes thereby an agent, and the other, as principal, may be required by the seller of the goods to pay the consideration.

At Law.

*Jenkins, Winkler & Smith,* for plaintiffs.

*Goodwin & Miller,* for defendant.

DYER, J., *(charging jury.)*   These are two actions, one brought by Charles Pope and the other by D. W. Ryan, against the Meadow Spring Distilling Company, to recover in the one case the purchase price of a certain quantity of malt, and in the other case the purchase price of a quantity of barrels, which it is alleged came to the possession of the defendant company through a sale of the same, in the first instance, to one Leopold Wirth, and of which property, it is alleged, the defendant had the use and benefit.   The complaint in the case of Pope charges that in August, 1883, Leopold Wirth, who was the president of the defendant company, ordered of the plaintiff, who was a maltster in Chicago, two car-loads of malt suitable for use in a distillery, and the plaintiff Pope, at the request of Wirth, shipped to him such two car-loads of malt on the twenty-eighth and twenty-ninth days of August, 1883; that the same were of the value of $1,255.78; that Wirth made the order and request for the malt for the use and benefit, and with the knowledge and on behalf, of the defendant, and for the purpose of getting the same into the possession of the defendant; that the defendant company realized the whole benefit and advantage of the purchase, and received the malt in pursuance of the shipment by the plaintiff, and used the same, and became thereby indebted to the plaintiff in the amount of the purchase price, $1,255.78.   In the case of Ryan, the same state of facts and grounds of alleged liability are stated, except that the property described consisted of three car-loads of barrels, the value and purchase price of which are alleged to have been $775.25, which is the amount sought to be recovered by the plaintiff Ryan.

It is undisputed that the plaintiffs in the several actions, at the time they sold the property in question, made the sales on the indi-

vidual credit of Wirth, and shipped the property to him as the purchaser and personal consignee thereof, and respectively received and accepted his individual acceptances for the purchase price, which acceptances were ultimately not paid. It seems that at the time of these transactions the Meadow Spring Distilling Company was a corporation owning and operating a newly-constructed distillery in this city, of which corporation Leopold Wirth was the president, and of which, in the conduct of its business, William Bergenthal was the general manager. It is claimed by the plaintiffs, in their respective cases, that immediately after the arrival of the malt and barrels in Milwaukee, the same were removed to the distillery of the defendant company, and that the defendant had the full use and benefit of the property in its business. The theory of the plaintiffs is that although Wirth negotiated for and ordered the malt and barrels in question in his own name and on his individual credit, he in fact made the purchase for the use and benefit of the defendant company; that the property was purchased to be used at the distillery of the defendant, and on behalf and with the knowledge of the company, and that the defendant in fact had the use and received the whole benefit of the property, and therefore ought to pay, and in law became liable to pay, for the same. The claim of the defendant in both cases is that the purchases were made by Leopold Wirth on his own account, for his own use, and on his sole credit; that the purchases were not made by him as an agent; that he had no authority so to act for the defendant; that the defendant company at the time had no knowledge of the transactions; that the purchases were not originally made for its use and benefit; that it had no connection therewith, and did not authorize the same, and that subsequently, after Wirth had become the owner of the property in his own right, it purchased the malt and barrels from him as a subsequent and independent transaction, and paid him therefor; that, therefore, it is under no liability to the plaintiffs.

In submitting the cases to you, gentlemen, the court will not enter upon any discussion of the testimony. The facts lie within narrow compass, and they have been fully elucidated by counsel. You have heard the versions, given on both sides, of the negotiations which took place between Wirth and the plaintiffs in Chicago, the evidence of which the court has no doubt is admissible as tending to show the relations of Wirth to the transactions in dispute, and as bearing upon the character in which he acted in making the purchases. All the facts material to the controversy have been laid before you, and you are to say, in the light of those facts and the instructions which the court gives to you upon the law of the case, what the rights of the parties are. It is the law that where goods are sold to a person who is in fact an agent of another, and on the credit of such person, but without knowledge of the agency on the part of the seller, the latter has the right to make the principal his debtor on discovering him;

and the fact that he may have taken the note or acceptance of such buyer for the goods before discovering the principal, will not affect his right to pursue the real principal. So, too, if the party making the purchase in fact purchases the property, not for himself, but for the use and benefit of a third party, and if such third party, knowing of such purchase, takes the property and appropriates it to his own use and benefit, he is liable for the value thereof to the seller, although the seller may not have known, when he made the sale, that such third party was the *real* party in interest, and may have understood at the time that he was making the sale to the party with whom he directly dealt, and may have made the sale on the credit of such party. It is also a principle of law that where the purchaser of goods upon credit is known to the seller to be an agent of a known principal, and the seller with such knowledge gives exclusive credit to the agent by taking his note or acceptance for the goods, the agent alone is responsible to the seller.

Applying these principles to this case, if you should find that Wirth, when he purchased the malt and barrels in question, was in fact the agent of the defendant company in making the purchase; that he purchased the property for the defendant, and for its use and benefit; and that the plaintiffs were at the time ignorant of such agency,—then, on discovery that the defendant was the real principal in the transactions, the plaintiffs had the right to assert their claims against the defendant, and, upon such state of facts being established, they are entitled to recover from the defendant the value of the property so sold, although they took the personal acceptances of Wirth for the property. Or if you should find that, although Wirth had not original authority to make the purchases, he did in fact purchase the malt and barrels for the use and benefit of the defendant, and on its behalf, and that the defendant company, by its president and general manager, knew of such purchase, and with this knowledge received the property, and had the use and benefit of it, then the plaintiffs are entitled to recover, although they may not have known, when they made the sales, that the defendant *was* the real party in interest, and may have understood at the time that they were selling to Wirth, and, in ignorance of the real party in interest, may have taken his acceptances for the property. But if Wirth was the authorized agent of the defendant in the purchase of the property, and if the plaintiffs knew such to be the fact, and knew the Meadow Spring Distilling Company to be his principal, and to be liable on the purchases, and the property was sold on the exclusive credit of Wirth, the plaintiffs electing to trust him and not the defendant company, then the plaintiffs are not entitled to recover. Further, if Wirth was not the authorized agent of the defendant, and did not purchase the malt and barrels for the use and benefit of the defendant, or on its behalf, but purchased them for himself, in his own individual right, and on his own account, then he became the owner of the property, and was

solely liable therefor to the plaintiffs, and in that event he would have the right to sell the same to the defendant, or any other person; and if you should find such to be the state of the case, your verdict should be for the defendant.

These are precisely what the defendant insists were the facts in connection with the transactions between Wirth and the plaintiffs; that is, that he had no authority to act for the defendant, and did not assume to act for it; that he made the purchases in the usual course of business for himself and in his individual right, and not for the use and benefit of the defendant; that he gave his acceptances therefor, expecting to pay them when due; and that he sold the property afterwards in good faith to the defendant, receiving actual payment therefor in the way of credits on certain indebtedness he was owing to the defendant. If this be so, then, obviously, the plaintiffs can only look to Wirth for payment of their debt.

On the other hand, it is contended by the plaintiffs that the real party in interest in these transactions was the Meadow Spring Distilling Company; that Wirth was the president of the company, and really made these purchases for the use and benefit of the company, and that, as originally contemplated, the defendant had the use and benefit of the property; that on its arrival in Milwaukee the malt and barrels passed directly into the possession of the defendant; and that the alleged sale of the property from Wirth to the defendant was but a cover to disguise the transaction, and to enable the company to apply the property upon Wirth's prior indebtedness on account of stock in the corporation, without paying the plaintiffs therefor. Various facts and circumstances are relied on in support of this contention, and have been called to your attention. If the transaction was of the character thus claimed, it will doubtless be your pleasure, as it certainly would be your duty, to unmask it, and place the liability for this property where in such state of the case it would belong.

In examining these transactions you will apply to them, in the light of the evidence, the test of reason and good sense. Which theory of the case is best supported by credible testimony, and by such reasonable probabilities as you would naturally take into consideration in ascertaining the real character of a business transaction? Which theory is most consistent with good faith, and with the way in which business men would ordinarily be expected to do business under similar circumstances? These are points of inquiry pertinent to the issue to be decided by you, and it is your duty to look into all the circumstances of the transactions in dispute, and upon the whole evidence, and under the instructions given you by the court, determine what the rights of the parties are. If you find the plaintiff Pope entitled to recover, the measure of his recovery would be the value of the malt at the time of the sale, and I do not understand it to be disputed that such value was the purchase price, namely, $1,255.78; and if you find the plaintiff Ryan entitled to recover, the measure of his recovery

would be the value of the barrels at the time of the sale, and I take it to be conceded that such value was the purchase price of the barrels, which was $775.25.

Verdicts for plaintiffs.