## SCHUTZ v. JORDAN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 280.   Argued April 1, 2, 1891. — Decided May 25, 1891.

When goods belonging to one party pass into the possession of another surreptitiously and without the knowledge of the latter, no contract of purchase is implied; and if the agent of the latter, who is a party to the surreptitious transfer, sells the goods and puts the proceeds into his principal's possession, but without his knowledge, the principal is not liable in an action for goods sold and delivered, whatever liability he may be under in an action for money had and received.

When the defence in an action for goods sold and delivered to an agent of the defendant is a denial that any such sale was made, the burden is on the plaintiff throughout the case to prove every essential part of the transaction, including the authority of the alleged agent to make the alleged purchase in the manner alleged.

The presumption that a letter properly directed and mailed reached its destination at the proper time and was duly received by the person to whom it was addressed is a presumption of fact, subject to control and limitation by other facts.

THE plaintiffs in error, plaintiffs below, were merchants doing business in the city of New York. The defendants were merchants doing business in the city of Boston. The latter had a large establishment, divided into different departments, fifty or sixty in number, with a superintendent in charge of each, and in the neighborhood of two thousand employés. The action was on an account for goods sold and delivered, was commenced in the Supreme Court of New York, and removed thereafter to the Circuit Court of the United States for the Southern District of New York. The complaint alleged: "At divers times on and between May 7, 1884, and July 30, 1885, the plaintiffs, at the special instance and request of the defendants, and at prices agreed upon, sold and delivered to the defendants certain goods, wares and merchandise, amounting in the aggregate, at such agreed prices, to the sum of thirty-two thousand six hundred and four $\frac{99}{100}$ dollars·

that the defendants have not paid the same, nor any part thereof, though due and payable." The answer at some length developed a defence which may be briefly stated as follows: That the defendants never purchased the goods in question; that among their various departments was one known as the "cloak department," which was in charge of one John H. Hewes, an employé, as superintendent; that while the superintendents of these various departments had general authority to buy, these defendants, finding that the stock of goods in this department was more than that desired, directed such superintendent not to increase the stock; that such directions were communicated to the plaintiffs; that, disregarding such instructions, they entered into a fraudulent combination with Hewes, by which they were to ship the goods to the defendants; and that he was to receive and distribute them alongside of the other goods in his department. The scheme further contemplated that by reason of the confidence and powers vested in Hewes by the defendants, and his management of the details, payment was to be secured in the name of the defendants, and from their funds, though without their knowledge. In other words, the plan as developed was that the plaintiffs, finding a general agent of defendants with authority to purchase, but aware of special restrictions on that authority, conspired with him to ignore such restrictions, and in defiance thereof to purchase these goods in defendants' name, and secure payment therefor out of the funds of the defendants in their name and without their knowledge. On trial before a jury the verdict was for the defendants in respect to these matters, and to the judgment entered thereon the plaintiffs sued out this writ. 32 Fed. Rep. 55.

*Mr. A. Blumenstiel* for plaintiffs in error.

I. The mailing of the invoices was presumptive evidence of their receipt. *Howard v. Daly*, 61 N. Y. 362, 365; *Austin v. Holland*, 69 N. Y. 571; *Huntley v. Whittier*, 105 Mass. 391; *Rosenthal v. Walker*, 111 U. S. 185; *Bell v. Lycoming Fire Ins. Co.*, 19 Hun, 238.

II. It was the duty of the court to charge the jury as to the shifting of proof — to inform them that the burden had shifted to the defendant. *Heliman* v. *Lazarus*, 12 Abbott N. C. 19, 24; *Nicholls* v. *Mase*, 94 N. Y. 160, 164; *Seybolt* v. *New York, Lake Erie &c. Railroad*, 95 N. Y. 562, 569; *Murphy* v. *Coney Island & Brooklyn Railroad*, 36 Hun, 199; *Howell* v. *Wright*, 41 Hun, 167; *Gay* v. *Parpart*, 106 U. S. 679; *Nelson* v. *Woodruff*, 1 Black, 156; *McKinney* v. *Neil*, 1 McLean, 540.

III. As to the ratification arising from the retention of the goods and the receipt of the proceeds after knowledge of the alleged fraud, see *Peoples' Bank* v. *National Bank*, 101 U. S. 181, 183; *Gaines* v. *Miller*, 111 U. S. 395; *Drakely* v. *Gregg*, 8 Wall. 242, 267; *Murray* v. *Binninger*, 33 How. (N. Y.) 425; *Meehan* v. *Forrester*, 52 N. Y. 277; *Cobb* v. *Dows*, 10 N. Y. 335.

*Mr. Nathaniel Myers* for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

On the general merits of the case, it may be observed that the action is on a contract for goods purchased by defendants. If no such contract of purchase was in fact made, the verdict was right; and this, although goods of the plaintiffs were surreptitiously put into the possession of defendants, and the proceeds of sales made thereof by their employés passed into their hands. While from the fact that goods belonging to one party pass into the possession of another a contract of purchase may sometimes be implied, it will not be implied when it appears that such transfer of possession was surreptitious, and without the knowledge of the latter. A party cannot be compelled to buy property which he does not wish to buy; and no trick of the vendor, conspiring with an agent of such party, by which possession is placed in him, creates on his part a contract of purchase. Nor is any contract of purchase created, even if it also appears that, unknown to the party, his agent who has entered into this wrongful combination has sold the

property and put the proceeds into his principal's possession. Whatever liability might exist in an action brought under those circumstances, for money had and received, no action will lie for goods sold and delivered. The party is not responsible under a contract and as a purchaser, whatever may be his liability for the moneys which he has received as the proceeds of the sales. The law in respect to these matters is clear; and the verdict of the jury was fully justified by the testimony. It would be a needless waste of time to develop the various details of the plan by which the plaintiffs and the agent of the defendants sought to take the goods of the plaintiffs, put them in the store of defendants, incorporate them with the general m.. ss of their goods, and secure payment out of the funds of the defendants without their knowledge. As might be expected, reliance was placed on the confidence and powers reposed and vested in Hewes by the defendants, and his familiarity with the details of their business. The plan worked successfully so far as regarded the introduction of the goods into the store of the defendants without their knowledge; but Hewes was not so successful in securing payment; so that, after nearly a year and a quarter, over thirty thousand dollars, according to the price agreed upon between Hewes and the plaintiffs, for goods thus transmitted, was still unpaid. It is true that the plaintiffs, and their agent by whom the arrangement was in the first instance made, denied the existence of any such arrangement. Upon this question of fact the verdict of the jury would be conclusive; and, notwithstanding their denial, the whole conduct of the business, as developed by their own testimony, makes strongly in favor of the truthfulness of Hewes in respect to the transaction. The verdict of the jury properly responded to the testimony.

There are several assignments of error; but the conclusions we have expressed upon the merits of the controversy avoid the necessity of referring to most of them. It would have been obviously improper to instruct the jury to find a verdict for the plaintiffs for all or any part of the goods thus surreptitiously placed in the store of the defendants.

There are two matters, however, which require special notice.

One is as to the instructions respecting the burden of proof. The court w _ ˙asked by the plaintiffs to charge: " The burden of establishing the defence set up in the answer is upon the defendants, and such defence being founded upon allegations of fraud and conspiracy, the same must be proven to the satisfaction of the jury. Fraud is never presumed. It ˙must be proven by facts which warrant such an inference." This request was refused, and the law was thus laid down:

" I have been requested to instruct you as to the burden of proof.

" As to that I can only say that the burden of proof. is on the plaintiffs to make out their case and make it out all the way through; that is, in the first place they must show you that these goods were sold in the usual course to Mr. Hewes, acting for the defendants; but if they fail in that, it is for them to satisfy you that this quantity of goods was so large that the defendants must have known about it and ratified it by going right along and selling after they had found out about it, that is, it is on the plaintiffs to make out their case.

" The fact that the goods got into the establishment of the defendants or that the goods were received by the carrier which the defendants authorized to take the goods here in New York, is made out — there is no question about that; no question in the case but what plaintiffs parted with their goods or that they got where the defendants are liable for them if they bought them; there is no question about that. If they make out that the. defendants did buy them, then the defendants had the goods and are liable for them.

" But that the bargain was a bargain for the sale of these goods to Mr. Hewes in the usual course of business, it is for the plaintiffs to make out further, and if they do not make that out, that the defendants ought to have known that they were receiving those goods is to be made out by the plaintiffs."

The ruling of the trial court was correct; the burden was on the plaintiffs, and to the extent indicated in the instructions. This is not a case in which some independent matter is set up as a defence — payment, breach of warranty, counter-

claim, and the like, a defence which practically admits the plaintiffs' cause of action, and seeks to defeat it by the existence of other facts. It was not like the plea of confession and avoidance. It was a denial, it denied the sale; and the burden of proving the sale was on the plaintiffs, and rested with them until the close of the case. It would not establish a purchase by the defendants, that an agent of theirs had made a contract. The plaintiffs must go further, and prove that such agent had authority to make the contract. Not to make contracts generally; but to make the contract which in fact was made. A party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it. The burden is on the plaintiff. The plaintiffs would not contend that they had made out a cause of action against the defendants, by proving that Hewes had made a purchase in their name. Of course they must go further, and prove that he had authority to purchase; and they must also prove that the purchase was within the authority conferred. Authority to buy one class of goods would not be authority to buy another and entirely different class. Authority to buy in the usual course of business would not be authority to buy outside of that course of business. And when they rely upon contracts made with Hewes the burden is on them, and continues on them, to establish the contract which in fact was made, and that it was within the scope of his authority as agent. There was no error in this respect.

The other specification of error is this: A significant fact in the claim of defendants is that these transactions were going on for fourteen months and over, and that they had no knowledge of them; and that though their house was one of known solvency, with a carefully acquired reputation for early payments, no account of the plaintiffs ever reached them. Of course, if there was a studied concealment on the part of the plaintiffs, it would be very significant. As against this, there was testimony that two or three times a statement of account was mailed to the defendants. The defendants called Joseph N. Bassett, who testified that during this time he was their

book-keeper, and that he had never received any such statement of account. He then explained the course of business in the defendants' establishment; that the letters, of which four or five hundred were received daily, were opened by the corresponding clerk, and by him distributed; that there were fifty or sixty retail departments; that bills when received were distributed by him, the bill of goods for each department being placed in a box with the same number as the department; that the buyer, the party in charge of that department, had access to the box; and that it was his duty and habit to take the bills out and O. K. them and return them to him, the book-keeper, for entry. While there were three or four members of the firm of Jordan, Marsh & Co., defendants herein, only one was on the witness stand to testify as to a want of knowledge on the part of defendants of these transactions. No special instructions were asked by the defendants in respect to this; but the court, of its own motion, charged the jury as follows:

" The fact the plaintiffs mailed such letters, whether the defendants received them or not, bears upon the question as to the conduct of the plaintiffs and their good faith in this transaction. It does not affect the defendants unless they received the letters. The fact that a letter is mailed does not, in court, establish the fact that the person it is mailed to received it. That is not proof of that fact. In certain transactions about protesting notes and charging endorsers of commercial paper and things of that sort, the mere fact of mailing a letter answers; but when a party is to be affected with knowledge of what is in the letter and the contents of it, and what goes with it, they must go further and prove not only that it was mailed, but that the party to whom it was addressed got it."

Of this, plaintiffs now complain. Doubtless this instruction is open to criticism. In *Rosenthal* v. *Walker*, 111 U. S. 185, 193, it was said: " The rule is well settled that if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was

received by the person to whom it was addressed. *Saunderson* v. *Judge*, 2 H. Bl. 509; *Woodcock* v. *Houldsworth*, 16 M. & W. 124; *Dunlop* v. *Higgins*, 1 H. L. Cas. 381; *Callan* v. *Gaylord*, 3 Watts, 321; *Starr* v. *Torrey*, 2 Zabr. 190; *Tanner* v. *Hughes*, 53 Penn. St. 289; *Howard* v. *Daly*, 61 N. Y. 362; *Huntley* v. *Whittier*, 105 Mass. 391." See also *Henderson* v. *Carbondale Coal and Coke Co.*, 140 U. S. 25.

And yet, under the circumstances of this case, we cannot think that the jury were misled, or that the instruction was erroneous. Ordinarily where the evidence shows that goods passed into the store of defendants, and were received by their agents, it would be held that a purchase was established; but when, as here, the direct testimony shows that the goods were thus passed into the store of defendants surreptitiously, by collusion with one of their employés, the presumption otherwise existing is overthrown, and by special instructions to divert their attention from the positive testimony as to the circumstances under which the goods were thus placed in the store, to the inference which would arise from the unexplained receipt of the goods, would be very apt to mislead a jury. The attention of the jury should rather be directed to the direct testimony, as to the circumstances under which the goods were passed into the store of the defendants, and to the actual knowledge on the part of the defendants of the receipt of the goods. So while the mailing of a letter creates an inference, raises a presumption that the party to whom it was addressed received it in due course of mail, and thus acquired knowledge of the matters stated therein, yet such presumption is one of fact, not of law. It is not conclusive, but subject to control and limitation by other facts. The undisputed testimony was, that the letters (of which hundreds were received daily) were not taken and examined by the defendants personally, but received and distributed by their corresponding clerk; that statements of goods purchased for the "cloak department" would, by the custom of business, pass into the hands of Hewes, the party who was engaged in these transactions; and that they should have passed from him O. K.'d, to the book-keeper; but that none ever did reach the latter. Under

those circumstances, to instruct that the mailing of these statements creates a presumption that the defendants personally received them, and were thus notified of the purchases being made by Hewes, would probably have misled the jury. When a letter is duly mailed a presumption arises that it is delivered; but that presumption is that it is delivered in the usual course of business; and when the usual course of business is for an agent of a party to receive his mail, the presumption is that the agent received it rather than the principal. Here the testimony shows that the usual course of business sent the letters containing these statements into the hands of Hewes, the wrongdoer; and he testifies that he turned no statements over to his principals, and gave them no information until after the close of these transactions. There is surely no presumption that the ordinary course of business in the establishment of defendants was departed from in the present case. There is no presumption that the defendants themselves received the mail, or distributed it, or that the corresponding clerk in these instances departed from the usual course of business, and handed these special letters to his principals. And an instruction which would lead the jury to suppose that from the fact of mailing all the other presumptions arising from the ordinary course of business in the establishment of defendants were to be ignored, would be incorrect in law, as well as misleading.

These are the only specifications of error, other than those involved in the general merits of the case, which we deem it necessary to mention. We see no error in the proceedings. The judgment was right, and it is

*Affirmed.*