## CURLEE CLOTHING CO. v. ROBINSON et al.

No. 17131.   Opinion Filed Dec. 6, 1927.

Rehearing Denied March 20, 1928.

(Syllabus.)

1. **Sales—Damages for Breach of Contract to Purchase—Failure of Proof of Contract.**

In an action for damages for breach of contract for the purchase of merchandise, no recovery can be had where the uncontradicted evidence is that no contract was made.

2. **Same—Merchandise—Acts Held not to Constitute Acceptance by Merchant.**

Where goods are placed in the store of a merchant, without the knowledge of such merchant, by one who claims to have sold them to such merchant, though such merchant had notified the seller that he would not receive them, and the seller is notified that the goods are rejected, and such goods are shipped back to the seller, and the carrier is about to sell the goods for freight, and the merchant in whose store they were placed orders the carrier to return the goods and promptly notified the seller that he holds the goods for the seller, such acts do not constitute acceptance of the goods, where the party into whose hands they were so placed shows by undisputed evidence that he did not contract for the goods in the first instance, and shows that he was in good faith at all times intending not to accept them.

3. **Same—Merchant's Possession as Involuntary Gratuitous Bailee.**

In such case the party into whose store the goods were placed would become an involuntary gratuitous bailee.

4. **Instructions Approved.**

Instructions given, and those offered and modified and given, as modified, examined, and held to properly state the law.

Commissioners' Opinion, Division No. 2.

Error from District Court, Haskell County; D. C. McCurtain, Judge.

Action by Curlee Clothing Company against R. M. Robinson, Keese Robinson, and O. H. Smith, partners engaged in business under the firm name of Robinson-Smith Company. Judgment for defendants, and plaintiff appeals. Affirmed.

Malcolm E. Rosser, for plaintiff in error.

Guy A. Curry and W. H. Brown, for defendants in error.

DIFFENDAFFER, C. This is an action to recover the purchase price of certain goods alleged to have been sold and delivered by plaintiff to defendants, and to recover damages in the sum of $343 for an alleged breach of contract for the purchase of a portion of the goods claimed to have been contracted for by defendants

The claim of plaintiff is that, on the 10th day of May, 1920, defendants gave plaintiff a written order for certain clothing amounting to $2,097.75; that plaintiff received and accepted the order on the 12th day of May, 1920, and proceeded at once to the manufacture of the clothing; and that on June 4, 1920, defendants attempted to cancel the order, and that at that time plaintiff had so far proceeded with the order that clothing to the value of $1,354.75 was in process of manufacture; that plaintiff then proceeded no further with the manu-

facture of such of the clothing as was not then in process of manufacture, but continued with and afterwards shipped the $1,354.-75 worth of the clothing to defendants, and claimed that defendants had accepted same and were therefore indebted to plaintiff in that sum for the clothing delivered, and claimed damages in the sum of $343 for breach of the contract as to the remainder of the clothing.

The alleged order was not signed by defendants, and the uncontradicted evidence was that no such order was ever given. The evidence does disclose that a tentative order for some 35 suits of men's clothing was given by one of the members of defendant firm to plaintiff's salesman; that the tentative order included ten suits of clothes known as No. 6121, which was a well-known suit nationally advertised by plaintiff, and which had been handled by defendants in their store for a number of years. These ten suits were not included in the clothing shipped to defendants. It is conceded that defendants, long before any clothes were shipped, had canceled the so-called order, and directed and notified plaintiff not to ship any of the clothing.

Plaintiff contends that defendants by their letters dated May 21st, and June 4, 1920, the former saying:

"You will hold our fall order for clothing until we advise you to ship. Positively do not ship until you are advised by us to ship"

—and the latter stating: "You will please cancel the fall order for clothing. Positively do not ship."

—was a recognition of the order claimed by plaintiff to have been given, and bound defendants to accept any pay for the goods. As to what such letters must contain to constitute a sufficient memorandum, the rule is:

"The memorandum must as a general rule contain the essentials of the contract so that they can be ascertained by the writing without resort to oral evidence." 25 R. C. L. 645, par. 276.

Applying this rule, it is clear that the letters did not contain sufficient essentials of the order to bind defendants as by contract.

The uncontradicted evidence is that whatever order was given was upon condition that what was termed "Swatzes," or samples of the goods out of which the clothes were to be made, and the prices were to be furnished to defendants for their approval before the order should become final, and that no such samples or prices were furnished. It therefore follows that there was no contract entered into, and that plaintiff was not entitled to recover on that part of its action based on damages for a breach of contract.

As for the clothing shipped, it is contended by plaintiff that defendants accepted the shipment of clothing and so dealt with them that they were liable therefor whether they had ordered them or not. As stated before, defendants, on the 4th day of June, 1920, some 83 days before the clothing was shipped, notified plaintiff not to ship the goods, and again, some time about the 1st of August, 1920, one of defendants, while in St. Louis, notified plaintiff in person not to ship them, and that the clothing would not be accepted if shipped.

Plaintiff, however, shipped the clothing from St. Louis, Mo., to defendants at Keota, Okla., on the 26th day of August, 1920. Before the goods were shipped, defendants notified the drayman, who usually hauled defendants' goods from the depot in Keota to their store, not to accept the shipment in question should it arrive. The goods arrived while two members of the defendant firm were absent, one of them being in the hospital at Rochester, Minn., and the other having accompanied his brother to Rochester. The drayman took the goods from the depot and placed them in defendants' store, without the knowledge of any of defendants, and paid the freight thereon. When he presented his bill for the freight to defendant Smith, who was the only member of the firm then at the store, and who was bookkeeper for the firm, he declined to pay the same, and a few days thereafter the drayman again presented this bill, along with others, to a young lady who was working in the store, and she wrote a check for the combined amount, and Smith signed it, as he testified, without knowing that the freight bill for the shipment of clothing was included therein. When one of the other members of the firm returned to the store, and found the shipment of clothing in the store, he immediately called the drayman and had them taken back to the railroad company and shipped them back to plaintiff at St. Louis, Mo., and notified plaintiff that the goods were not accepted, and that defendants were returning same to it. When they arrived in St. Louis, plaintiff declined to accept them, and they were held by the railroad company until about November 1st, when the railroad company notified defend-

ants that the goods were about to be sold for the freight. Defendants then directed the railroad company to return them to Keota, which was done, and defendants paid the freight due thereon and again notified plaintiff that the goods were there subject to plaintiff's order.

Under this state of facts, it is contended that the trial court erred in refusing to direct the jury to return a verdict for plaintiff for the value of the goods.

It is a well-settled rule of law that a contract of purchase of goods will not be implied by a transfer of possession when such transfer was surreptitious, and without the knowledge of the buyer. A person cannot be compelled to buy goods against his will, and no trick of one person, by which property is placed in the possession of another without his knowledge, can raise an implied promise to pay therefor. 23 R. C. L. 1263, par. 80, Schutz v. Jordan, 141 U. S. 213. See, also, Lyndon Mill Co. v. Lyndon Literary & Biblical Inst. (Vt.) 22 Atl. 575.

The placing of the goods in defendants' store under the circumstances shown by the evidence brought defendants into the position of an involuntary gratuitous bailee. They did all they could to return the goods to plaintiff by whom the goods had been shipped to defendants contrary to express directions. We do not think the · acts of defendants were such as to render them liable for the purchase price of the goods as a matter of law. The refusal of the peremptory instruction was not error.

There are several assignments of error as to the instructions. We have examined the instructions given, and are of the opinion that there was no error; nor was there error in modifying certain instructions offered by plaintiff.

The judgment should be affirmed.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 591. (2) 35 Cyc. p. 261; 23 R. C. L. p. 1263; 5 R. C. L. Supp. p. 1257. (3) 6 C. J. p. 1105, §30. (4) 35 Cyc. p. 601; 38 Cyc. p. 1720.