**ADAMS v. BARRON G. COLLIER, Inc.**

No. 9949.

Circuit Court of Appeals, Eighth Circuit.

Nov. 12, 1934.

Robert R. Troyer, of Omaha, Neb. (George C. Pardee, of Omaha, Neb., on the brief), for appellant.

George F. Shea, of Washington, D. C. (Mullen, Mullen, Shea & Massey, of Omaha, Neb., and Caruthers Ewing, of New York City, on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

BELL, District Judge.

This is an action for damages for breach of a contract. At the close of the case the court directed a verdict for appellee, and this appeal is from a judgment entered on the verdict.

In November, 1925, appellant secured a lease, in the name of the Omaha Hotel Supply Company, of which he was president and owner, from the Street Railway Company of Omaha and Council Bluffs, granting him the exclusive advertising rights on its street cars and busses for a period of ten years beginning January 1, 1926.

The contract on which the suit was brought was made on December 7, 1925, by appellant and Barron G. Collier as individuals. In this contract appellant agreed. to assign to Collier the lease with the Street Railway Company for a consideration of $42,500, which was paid, and it was agreed that appellant would be employed for a period of ten years at a salary of $6,000 per annum. As provided by the contract, a corporation, the Western Car Advertising Company, was organized to conduct the business; and the appellant, as vice president and managing agent of this company, entered upon the performance of his duties January 1, 1926, but was discharged in June, 1928. The claim was for salary for the unexpired portion of the ten-year period. Barron G. Collier, Inc., of New York—not Barron G. Collier individually—was sued on the ground that the former was the undisclosed principal of the latter in making the contract with appellant.

Appellee defended on the ground that it was not a principal to the contract made by appellant with Collier as an individual, that it did not ratify the contract, and that appellant was discharged for cause. The motion to direct a verdict was sustained on the ground that the evidence did not show that appellee was an undisclosed principal to the contract; consequently, an analysis of the evidence is necessary.

There is little dispute in the evidence as to the essential facts. The decisive question is whether the court was in error in its appraisal of the probative effect of the evidence and the inferences that reasonably might be drawn therefrom.

Barron G. Collier was the dominating personality of an extensive enterprise which was engaged in procuring and placing advertising cards in street cars and similar public conveyances. This organization was composed of some forty-seven different corporate units occupying various fields and performing different functions in the group; some were general in their operations, while others were local. For ten years prior to January, 1926, Barron G. Collier, Inc., of which Barron G. Collier was the president, had held a lease with the Street Railway Company for advertising in its street cars. Pursuant to bids requested by the Street Railway Company in November, 1925, the appellant secured the exclusive lease for this advertising privilege for a period of ten years beginning January 1, 1926. Appellee was an unsuccessful bidder. Obviously, Collier had no intention of losing the business because he came to Omaha promptly after the lease was let to appellant and on December 7, 1925, entered into the contract with appellant which provided for an assignment of the lease to himself for the consideration stated. A paragraph of this contract material to the issue herein follows: "It is agreed that after having possession of the advertising leases mentioned above, the said party of the second part will arrange with Barron G. Collier, Inc., to form a company known as the Western Car Advertising Company, or the Omaha Car Advertising Company, which company shall have complete control and be the selling agency of all the local space in the street cars and buses in the cities of Omaha and Council Bluffs. The billing will be done in the name of the company and the local business will be carried on by it. The party of the second part will either organize a company under the laws of the state of Nebraska, with an authorized capital of $25,000.00, or will use a company already organized under the laws of some other state. All of the stock in this company is to be subscribed and owned by the party of the second part, or Barron G. Collier, Inc. The party of the first part shall not own any of the stock in this company, and either the party of the second part, or Barron G. Collier, Inc., will own and control all of the stock in said company."

Certain acts of the appellee after this contract was made are impressive. The lease with the Street Railway Company was assigned by appellant to Collier, December 8, 1925, and on the same day appellee executed an acceptance as follows:

"The undersigned hereby and by these presents does accept the above assignment and accepts assignment of the obligations of the party of the second part in and to said contract above referred to, which original contract is attached hereto and is made a part hereof, and the undersigned accepts all

of the conditions therein as fully and effectually as if it were the party of the second part as referred to in said contract.

"Barron G. Collier, Incorporated
"Barron G. Collier, Its President."

The lease with the Street Railway Company (called a contract in the acceptance) required appellant to give and keep in force a surety bond in the sum of $24,000 assuring the faithful performance of the obligations of the lease. On December 21, 1925, the required bond was given by appellee and it recited:

"Whereas, the said Principal is the assignee of a certain contract dated the 11th day of November, 1925, between said Obligee and Omaha Hotel Supply Company, wherein said Obligee has leased, given and granted unto the said Omaha Hotel Supply Company, its successors and assigns or legal representatives, the sole and exclusive rights and privileges in, upon or about all the cars now or hereafter owned or controlled by, or operated by the Obligee, or upon its lines or rails, for and during a period commencing on the 1st day of January, 1926, and ending on the 31st day of December, 1935, to which contract reference is hereby made. * * *

"Now Therefore, The Condition Of This Obligation Is Such, That if the said Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to make payments as provided in said contract during the period beginning on the 1st day of January, 1926, and ending on the 31st day of December, 1926, then this obligation to be void, otherwise to remain in full force and effect."

This bond was renewed from year to year, and in the second renewal, on November 28, 1927, the contract (lease) was recited with the reference, "which contract was assigned to B. G. Collier, Inc." This renewal was executed on the part of appellee by "Barron G. Collier, Inc., by J. G. Lackey, Vice-president, W. H. Buckner, Secretary." Collier made a formal written assignment of the contract to appellee on June 9, 1928, two days before appellant was discharged, for a recited consideration of $1. The appellee paid the Street Railway Company monthly rentals ranging from $2,000 to $2,708.33 per month under the new lease as it had paid the rentals under the lease that had existed prior to January 1, 1926.

The evidence above stated is of primary importance, but there is other evidence worthy of consideration. Salaries of the employees connected with the business, including appellant, were paid by appellee. Officers and agents of appellee directed the appellant in the conduct and management of the business. Much of the correspondence was with appellee's New York office, but most of it was with the Street Railway Advertising Company, a Collier corporation. The same office furniture and telephone of appellee that had been used under the old contract was used under the new. Collier gave his personal check in payment of the $42,500 to appellant, but was reimbursed by the Street Railway Advertising Company. The evidence does not show that appellee ever paid this consideration. The Western Car Advertising Company, a corporation with a "nominal stock," was dissolved soon after appellant was discharged. A plausible explanation of some of these facts is furnished, such as payment of expenses and salaries by appellee and the use of furniture and telephone number.

A number of familiar rules are applicable:

Where the evidence is such that the court, in the exercise of sound judicial discretion, would set aside an adverse verdict, then a verdict should be directed. Pennsylvania Railroad Company v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. Ed. 819; A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; General Casualty & Surety Co. v. Kierstead (C. C. A.) 67 F.(2d) 523; St. Louis-San Francisco Railway Company v. Bachler (C. C. A.) 26 F.(2d) 26. In passing on a motion to direct a verdict, it is the duty of the court to take the view of the evidence and the inferences that may properly be drawn therefrom most favorable to the plaintiff; and that, if the evidence is of such character that reasonable men might reach different conclusions, then the case should be submitted to the jury. Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720; Asher v. United States (C. C. A.) 63 F.(2d) 20; C., M., St. P. & P. Railroad Co. v. Linehan (C. C. A.) 66 F.(2d) 373; Farmers' National Bank v. Missouri Livestock Commission Company (C. C. A.) 53 F.(2d) 991.

A contract made by an agent in his own name may be shown to be that of the principal, where the transaction relates to the affairs of the principal and not to the personal affairs of the agent. Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366; and such a contract may be enforced at law against the principal, if within the agent's

authority, although the agency was undisclosed, Queen Insurance Company of America v. Citro (C. C. A.) 58 F.(2d) 107; Dietrich v. United States Shipping Board Emergency Fleet Corporation (C. C. A.) 9 F.(2d) 733. An undisclosed principal is bound by simple contracts made by an agent, and acts done by an agent in relation thereto, within the scope of his authority. Hill v. Development Corporation (C. C. A.) 52 F.(2d) 142.

■■ The appellant, having asserted agency, had the burden of proving it. Schutz v. Jordan, 141 U. S. 213, 11 S. Ct. 906, 35 L. Ed. 705; Texas Company v. Quelquejeu (C. C. A.) 263 F. 491; Knox College v. Gray (C. C. A.) 299 F. 179. In this case it was the duty of appellant to establish a prima facie case by evidence which, if believed, would clearly show that appellee was the undisclosed principal of Collier, the individual. This required something more than facts from which the jury might guess that such a relation existed. However, when a contract is made by an agent for an undisclosed principal, there must be some reason for not disclosing the relation, and the agency usually is difficult to prove especially where both parties deny it. The relation may be proved by circumstantial evidence showing the relation of the parties and their conduct with reference to the subject-matter of the contract. Pope v. Meadow Spring Distilling Company (C. C.) 20 F. 35; Collentine v. Johnston et al., 203 Iowa, 109, 202 N. W. 535, 208 N. W. 318; Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024; Auto Parts Company v. Roberts, 194 Ill. App. 417; Ellis v. Crawford, 39 Cal. 523.

■ The provisions of the contract above quoted are of especial significance. It should be observed that the party of the second part (Collier) agreed to arrange with Barron G. Collier, Inc. (appellee) "to form a company known as the Western Car Advertising Company, or the Omaha Car Advertising Company, which shall have complete control" of the business in Omaha and Council Bluffs; also that "all the stock of this company is to be subscribed and owned by the party of the second part, or Barron G. Collier, Inc." It was expressly provided that "the party of the first part shall not own any of the stock in this company, and either the party of the second part, or Barron G. Collier, Inc., will own and control all the stock in said company." If Collier performed his part of this contract, he arranged with appellee to form a company. The Western Car Advertising Company was organized, and the local business was conducted in its name. This is not conclusive evidence that appellee incorporated and owned all the stock in the Western Car Advertising Company, or that it was an undisclosed principal, but the provisions of the written contract reveal that appellee was not overlooked when the contract was made. They tend to show the intention of Collier at the time to bestow on appellee the benefits of the contract or, in other words, that it was made for the use and benefit of appellee. It is convincing evidence that appellee was the real party in interest.

In addition to the provisions of the contract, there were five acts of the appellee and Collier of outstanding importance, as follows: The written acceptance of the contract; the bond admitting ownership of the contract; the renewal bond reciting that it was an assignee of the contract; the payments made monthly by appellee to the Street Railway Company; and the formal assignment of the contract in writing by Collier to appellee for a consideration of $1 two days before appellant was discharged. It is difficult to understand these acts if appellee were not interested in the contract from its inception. They were not satisfactorily explained. In accepting the contract and in making the bond, appellee expressly stated to the Street Railway Company that it was the assignee. A jury would have been justified in believing that what it said was true. That the assignment was actually made to it is the only theory justifying the acceptance; likewise, that the assignment was actually made is the only justification for the execution of the bond as principal. Such action occurring in connection with the assignment and shortly thereafter and before performance is very expressive of the interest of appellee in the enterprise. If it had defaulted in performance of the contract with the Street Railway Company, undoubtedly, it would have been held liable, not only because of the bond, but also because of its own written declarations in the acceptance and in the bond to the effect that it was the assignee. Moreover, it appears that the appellee on December 8, 1925, accepted the contract executed by appellant and Collier on December 7, 1925, with "all of the conditions therein as fully and effectually as if it were the party of the second part," which included the obligation to employ appellant. It is possible that appellee became the owner of the contract after it was assigned by appellant to Collier, and that it obtained no inter-

est at the time the contract was made; but the evidence might properly be interpreted by a jury to the contrary. The issue should have been submitted.

It is contended that the evidence did not show that Collier was an agent of appellee. This question in effect is determined by our view that the evidence was sufficient to submit the issue of whether appellee was an undisclosed principal. In this connection it is proper to observe that Collier was the president of Collier, Inc., and the corporation was charged with knowledge of his acts. It is well settled that the president or other general managing officer of a corporation has power prima facie to do any act which the directors could authorize or ratify. Sun Printing & Publishing Association v. Moore, supra. In this connection it should be remembered that appellee had an advertising lease from the Street Railway Company for ten years prior to January 1, 1926, and that through the activities of Collier it procured another lease for an additional term of ten years. Judging by results, Collier was an agent for appellee and was eminently successful in his efforts on behalf of his principal.

There is no merit in the contention that the contract was illegal. It is said that, because the contract provided that appellant was to be employed by a corporation to be organized, and for other reasons, the contract was invalid. It is true that there are corporate rights that cannot be contracted or bartered away by the promoters prior to incorporation, but that avenue of escape is not open to appellee in this case. Collier agreed to pay appellant as a consideration for the assignment of the lease the sum of $42,500 and to employ appellant for a term of ten years. If the appellee was an undisclosed principal, this obligation was imposed on it when it accepted the assignment of the contract with "all the conditions therein as fully and effectually as if it were the party of the second part." Clearly, the provision in the contract for employment of appellant was not illegal.

As there may be a retrial, it is appropriate to say that the testimony covered by assignments 7, 8, and 9, offered by appellant and excluded by the court, was admissible. The testimony consisted of statements made by Collier to the manager of the Street Railway Company in December, 1925, relative to the acceptance of the contract, the performance of its obligations, giving the bond, payment of the monthly rentals to the Street Railway Company by appellee, and substantially that the business would be conducted in the future as in the past. It is well settled that declarations of an agent are incompetent to prove agency; but, where the agency has been established by independent evidence, such declarations are competent in corroboration and to show that the agent was not acting on his individual account. Union Guaranty & Trust Co. v. Robinson (C. C. A.) 79 F. 420; Drabek v. Wedrickas, 182 Minn. 217, 234 N. W. 6. The agency had been sufficiently proved to justify the admission of this testimony especially as the statements came from the president of the appellee corporation in concluding the negotiations of an important business transaction with the manager of the Street Railway Company.

The judgment is reversed, and the case is remanded for a new trial.