FERRO CONCRETE CONST. CO. v. UNITED STATES for Use and Benefit of LUCHINI et al.

No. 3500.

Circuit Court of Appeals, First Circuit.

June 4, 1940.

Gerald W. Harrington, of Providence, R. I. (William H. Edwards and Edwards & Angell, all of Providence, R. I., on the brief), for appellant Ferro Concrete Const. Co.

Philip S. Knauer, of Providence, R. I., and William A. Murray, of Boston, Mass., for appellees.

Before MAGRUDER, Circuit Judge, and PETERS and McLELLAN, District Judges.

PETERS, District Judge.

This appeal is from a judgment of the United States District Court in Rhode Island entered after a jury verdict.

It appears from the evidence that in January, 1933, Ferro Concrete Construction Company, appellant, made a contract with the United States for the construction of a public building at Newport, Rhode Island, and gave the bond required by the Hurd Act. U.S.C.Tit. 40, Section 270, 40 U.S.C.A. § 270. L. Luchini & Son, appellees, as sub-contractors, agreed with the Ferro Company to furnish the stone for the building for the specified sum of $30,000. The stone called for by the sub-contract was furnished after some delay due to financial embarrassment of the Luchinis. During the progress of the work Ferro Company made various payments to the Luchinis and on their account aggregating $3,892.73 more than the contract price. Proceedings under the Hurd Act were brought by other sub-contractors and Luchini & Son came in as intervenors claiming under an abrogation or modification of the contract a larger sum due them than they had received; and, after a trial by jury lasting several days, they recovered a verdict for $27,-282.07 which represented the difference between $56,082.08, the amount of their claim, and the total amount they had been paid.

Objections were made by the Ferro Company to the admission and exclusion of evidence, to some parts of the judge's charge to the jury, and to the denial of motions for a directed verdict.

It will not be necessary to consider the objections to the other rulings at the trial, as we think that the motion for a directed verdict should have been granted.

It may be convenient to refer to the partnership of the Luchinis as "Luchini", or the plaintiff, and to the Ferro Company as "Ferro" or the defendant. For the

purposes of the trial they occupied substantially that relationship.

No question was made that the parties deliberately entered into an agreement, evidenced by a written contract in duplicate, dated March 25, 1933, to the effect that Luchini was to furnish and deliver at the building site, finished and ready to set, the granite necessary to complete the building in accordance with the general plans and specifications, and that in return Ferro was to pay Luchini $30,000, payable in instalments, at certain stages of the work. Luchini claimed that after the execution and delivery of this written contract it was modified or rescinded with respect to the sum of $30,000 to be paid for the work, and that in lieu of the contract price Ferro agreed to pay him "what it was worth to do the job". Denial by Ferro raised the issue of fact which was decided adversely to Ferro by the jury.

Counsel for Ferro claim that there was before the jury no credible or substantial evidence of any modification of the contract in respect of the price, and also that there was no evidence that the person alleged to have made the modification of the contract in behalf of Ferro had any authority, express or implied, to do so.

As we agree with the defendant's position on the question of the authority of the alleged agent to modify the written contract, and as a decision on that point is decisive of the case, we will not consider the other points raised.

The only evidence before the jury of any agreement with the defendant, or anyone in its behalf, by which the plaintiff could be considered released from his obligation to furnish the stone for the contract price, is the testimony of the younger Luchini as to a conversation some time in the summer of 1933 with Starr, the superintendent of construction. Luchini was uncertain as to when the conversation occurred, but finally fixed it as "a couple of weeks, I would say, from memory" after August 8, 1933, the date of a letter written by Luchini to Ferro authorizing the latter to place an additional man on the job to expedite the progress of the work at the quarry. The recital by Luchini of his conversation with Starr is as follows:

"I told him that I was having too great difficulty carrying on under the conditions as they existed and told him that he knew I couldn't get any money or raise any money and that I couldn't go on with an arrangement like that. And he asked me what I wanted. Well, we discussed the thing and I said 'You know that I am supposed to double this plant and I am supposed to—I am supposed to double the men at the plant and increase the plant machinery itself. You want me to do all this and I can't move a leg without going through you. So I don't see how I can carry on. I just can't go on and do what you want me to do. You can't speed up this thing unless you buy more machinery or rent it and put on more men, find more men in other locations, other granite areas, and maybe we might have to increase the stationary plant * * * the stationary plant, the machines at the plant. And I am working for you for nothing and my father is, and my brother, and you are getting the use of everything we have got and I still don't get any money for it. Now, I can't go on unless you come with me and help to get this equipment and pay me what it is worth to do the job, and pay me and my father's time and my brother's time.

"Q. 212. What did he say to that? A. Why that—well, he said, 'We can't change now and you go ahead. You do all you can and I will come with you and, if necessary, we will go together to these equipment places, and I will tell them that we will see that they get paid.'

"Q. 213. And what did he say about payment to you? A. He said, 'I will see that you get paid for your trouble and pay you what it is worth to do the job.'

"Mr. Edwards: Well, which is it?

"Q. 214. Now he asks you which it was. What do you say to us? A. Pay what it was worth to do the job."

Assuming that the conversation above quoted was had between the individuals, as stated by the witness Luchini, and that it was sufficient, if authorized, to bind the Ferro Company to "change the contract price from payment of a flat sum of thirty thousand dollars to a payment upon a quantum meruit basis", as plaintiff's counsel puts it, it is necessary to determine the extent of the authority vested in Starr to make such a change in the contract and whether, in the absence of actual authority, Ferro was bound by his action under the circumstances of the case.

In considering evidence as to the authority of Starr to make the alleged new contract with Luchini the rule as to

the burden of proof is important. It was thus stated in the case of Owens Bottle-Machine Co. v. Kanawha, B. & T. Co., 4 Cir., 259 F. 838, 842:

"It is of course an elementary rule of law that a person dealing with an alleged agent is bound to ascertain his authority, and that, when suit is brought against the principal in respect of an act of such agent, the burden is upon the plaintiff to establish, not only the fact of agency, but that the act upon which he relies was within the agent's authority."

"A party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it." Schutz v. Jordan, 141 U.S. 213, 11 S.Ct. 906, 907, 35 L.Ed. 705.

■ Persons who rely upon the authority of an agent to modify by parol a written contract entered into by his principal, do so at the risk of being bound by the contract as it was made. Dudley v. Perkins, 235 N.Y. 448, 139 N.E. 570.

The written contract here was a formal one entered into in behalf of the Ferro Company in Ohio by its vice president who had conducted the previous negotiations between the parties.

The evidence is clear to the effect that so far as actual, express authority in Starr to change the contract was concerned, he had none.

■ There is some claim of a ratification, but the record is barren of evidence by which a ratification could be established. To constitute a ratification the principal must have knowledge of all the material facts and circumstances relating to the unauthorized act of the person who assumed to act as agent. In this case the evidence was to the effect that the principal knew nothing about the alleged act of the agent until the year following, when a claim was made against the principal which was immediately rejected. The facts relied upon, from which it is claimed that knowledge by Ferro of a changed contractual relationship should be inferred, had no necessary connection with a changed price for the work.

The only arguable question relating to the evidence on the point whether the act of Starr in altering the contract, as alleged, under the circumstances, was binding on his employer, is whether the evidence showed that such an act was within the scope of his apparent authority.

■ Such acts of an agent as are within the apparent scope of authority conferred upon him are binding upon the principal; the apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise under such circumstances as to preclude a denial of its existence. If the principal places an agent in such a situation that a person of ordinary prudence and discretion is justified in assuming that the agent is authorized to perform, in behalf of his principal, the particular act in question, and such act has been performed, the principal is bound by what his agent did. Frye v. E. I. Du Pont De Nemours & Co., 129 Me. 289, 151 A. 537.

The record is somewhat lacking in evidence as to the status of Starr. It shows that, although not an officer of the corporation, he had been in its employ for some years as superintendent of construction and had acted as such on many building jobs. He had nothing to do with the negotiations preceding or the making of the original contract. The evidence was to the effect that matters of the handling of bids and making contracts were always exclusively attended to by the officers of the company. Plaintiff points to the statement of Starr that his job was "to see that the building was erected within the time allotted by our contract with the Government".

■ It appears from the evidence that, after Ferro made the contract with the Government to erect the building and the subcontract with Luchini to furnish the stone, Starr was sent to Newport to manage the construction, his job being to see that the work was done according to the contract with the Government and the stone furnished according to the sub-contract with Luchini. Starr did whatever he considered necessary to that end in each case. He went to the quarry in Massachusetts occasionally. He originated the arrangements with Luchini whereby the latter agreed that an "expeditor" should be put on the quarry to forward the work and to see that the money which Ferro advanced went into Ferro stone. This incident is much relied upon by the plaintiff as showing the authority, or ostensible authority, by Starr to change the contract. It is apparent, however, that such action

was more in furtherance of the performance of the contract than anything else, and the rule is that it is the conduct of the principal and not that of the agent which must be looked to in determining whether apparent authority exists. Chesapeake & O. Ry. v. Ringstaff, 6 Cir., 67 F.2d 482.

While Starr took the initiative in making the arrangement with Luchini about expediting the work, it is significant that it was submitted to an officer of the company for approval and action. There was no appearance of independent authority there to warrant Luchini, presumably a reasonably prudent and discreet man, in believing that Starr had any general authority to contract for his principal.

■ The evidence does not show that the apparent scope of authority given Starr as superintendent of construction was any greater than that title would imply. He was held out as an agent in matters pertaining to carrying out the contract and the construction of the building, but surely that does not justify a prudent business man in assuming that his authority extended to making a new contract as to the price. It would certainly not justify this particular business man in so assuming, because he was not in the position of a stranger. He himself, after negotiations, made the contract in writing with an officer of the company and also knew that that officer closely followed the work being done and came to the quarry when trouble arose and it seemed that he might not get the granite according to contract.

The exhibits in the case show that the correspondence between Luchini and the home office of the company was on letterheads which carried the printed statement that "All agreements are subject to the approval of one of the officers of the company".

The evidence shows that Luchini had every reason to believe that Starr's authority was limited to construction and the carrying out of the contract after it was made, and for that reason Luchini at his own peril dealt with Starr on any other basis. Kyte v. Commercial Union Assurance Co., 144 Mass. 43, 10 N.E. 518.

The information obtained by Luchini in his dealings with the company was amply sufficient to put him on notice that Starr had no general authority to act for the company outside of the particular sphere of activity indicated by his title, particularly where Luchini was the person who made the original contract with the company through one of its officers and the alleged change increased a considerable contract price by about eighty-five per cent. Southwestern Bell Telephone Company v. Coughlin, 5 Cir., 40 F.2d 349; Coal & Iron R. Co. v. Reherd, 4 Cir., 204 F. 859; Baltimore & O. Ry. Co. v. Jolly Brothers & Co., 71 Ohio St. 92, 72 N.E. 888.

■ "Authority in an agent to carry out or to perform a contract already made by his principal does not include authority to change the contract or to waive any of its provisions, especially where, as here, the provision is one which was intended for the benefit of the principal. Presumptively, an agent is employed to acquire interests, not to give them up." Morton v. Albers Milling Co., 66 Cal.App. 391, 226 P. 809, 812, and cases cited.

For reasons given, without touching upon others advanced by counsel for the defendant, which may well have merit, we are satisfied that the law applicable to the case requires that the motion made at the close of the evidence that a verdict be directed for the defendant on the claim made against it by Luchini & Son should have been granted.

■ The case having been tried after the Federal Rules of Civil Procedure had gone into effect, the denial of the defendant's motion for a directed verdict was equivalent to a submission of the action to the jury "subject to a later determination of the legal questions raised by the motion". Rule 50, 28 U.S.C.A. following section 723c. The defendant having moved seasonably that the verdict and judgment thereon be set aside and to have judgment entered in accordance with its motion for a directed verdict, there is no occasion for a new trial of the issues involved in the plaintiff's claim. The verdict for the plaintiff should be set aside, the judgment vacated and judgment for the defendant entered.

■ As to the defendant's counterclaim for the amount paid to the appellee in excess of the contract price the circumstances are not such as to permit a decision as a matter of law that the counterclaim is valid or invalid. Questions of fact requiring determination by a fact finding tribunal are here involved.

Accordingly, the verdict of the jury for the intervening petitioners and the judgment thereon are set aside, and the case is remanded to the District Court with directions to enter judgment for the defendants upon the intervening petition of L. Luchini & Son et al. and for a new trial upon the counterclaim of the Ferro Concrete Construction Company. The appellants recover costs of appeal against said L. Luchini & Son and Milford National Bank & Trust Company, intervening petitioners.