SUTTON v. MYRICK.

1. SPECIFIC PERFORMANCE: *Of parol contract: Evidence.*

Specific performance of a parol contract to convey land will not be enforced except upon clear and conclusive proof of the contract, and that it has been partly performed, and that the acts claiméd to be in part performance are referable to the contract alone, and were done under and in consequence of it.

2. TRUSTEE: *Liabilities: Compensation for outlays, time, trouble, etc.*

One who advances money to pay the debts of another, upon the security of rents, to be collected from year to year, upon land put into his possession, is a trustee, and will not be permitted to speculate upon the debtor. He will be held to account for the fair value of the annual rents, and be reimbursed for his outlays properly made in the performance of his duty, and interest thereon, and to compensation for his time and trouble in getting up the debts.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Horner,* for appellants :

1.   There was no contract of sale.   Myrick was in possession of the land, with a lien upon the rents, and not as purchaser.

2.   And being so in possession, held the same, as mortgagees, as security for their claims.   Mortgagees in possession, without special authority, will only be allowed for such improvements as are absolutely necessary for the support of the property and to keep it from waste and danger. (*18 Ark., 52; Landon v. Hooper, 6 Bea., 246; 2 Jones on Mortgages, sec. 1127.*)  They should have been charged with the actual and fair rental value of the lands, not necessarily what they did receive, but what they might or ought to have received. (*2 Wash. Real Prop., 208; ib., 207; Gordon*

Sutton v. Myrick.

*v. Lewis*, *2 ib.*, *143; 1 Hilliard*, *419; 5 Paige Ch.*, *8; Van Buren v. Olmstead*, *2 J. J. Marsh*, *465 ; Adkins v. Lewis*, *5 Oregon*, *592 ; Cook v. Ottawa University*, *14 Kansas*, *548 ; 2 Jones Mortg.*, sec. 1122; *73 N. Y.*, *96 ; 10 Paige*, *73 ; Barrett v. Nelson, S. C., Iowa. June 14, 1880, Reporter, vol. 10, p. 492.) A mortgagee is liable for waste. 1 Hilliard Mortg., p. 213 ; 2 J. J. Marsh (Ky.), 465.*

3. Myrick was a trustee in purchasing the claims, and should have been allowed only actual outlays, with interest.

4. Interest should have been allowed on the rents as they accrued.

*Thweatt & Quarles*, for appellees :

The evidence shows a verbal contract of sale, performance by payment of purchase-money, and taking possession under the contract, and demand for a deed in apt time, and refusal. Specific performance should have been decreed. *2 Story's Eq., p. 759, et seq.; Willard's Eq. Jur., pp. 261, 297-8-9 ; Adams' Eq., p. 183, vol. 1 ; Herman Pl. and Pr., p. 383 ; Morrison v. Peay, 21 Ark., 110, directly in point; ib., 137; 30 ib., 547; 16 Ark., 340 ; Story Eq., vol. 2, sec. 761.*

2. But, on the theory that appellees are mortgagees, the Master's report was correct, as to rents, charges for debts paid, improvements, taxes, etc. A mortgagee only bound for rent actually received, or that he might have received by exercise of reasonable care and diligence; and not answerable for waste of tenants, without his knowledge and consent. (*2 Wash. Real Prop., p. 206, sec. 4, (3d ed.); 2 Jones Mort., sec. 1123.*) As to improvements, see *2 Wash. Real Est., pp. 210–11, sec. 9 ; ib., p. 211; ib., p. 216, sec. 11 ; 2 Jones Mort., sec. 1129.*) The Master correct in applying rents to payment of taxes, repairs, etc., and there were no "rests" to be made. *2 Wash. R. P., p. 218, sec. 15 ; 2 Jones Mort., sec. 1133; 18 Ark., pp. 51–2.*

3. Myrick not a trustee, but the money paid was payment for the land.

*B. C. Brown* also for appellees:

The decree rendered at the May term, 1880, was just, and no motion was made by appellant to change, alter or add to the directions. It was strictly in form and the proper directions given. (*3 Dan. Ch. Pr., 2222.*) After proof taken and account stated and reported, it was too late to enlarge the original reference.

Appellees firmly believed they had acquired title to the land, and their conduct as to cutting timber, use, rents and improvements was caused by this belief. The evidence shows an agreement of sale, but in view of the policy of the law requiring contracts for sale of land to be in writing, the court probably determined that nothing but an equitable mortgage resulted. In allowing redemption equitable principles are to be applied. Full rents are not always charged, nor are improvements always disallowed. (*Hubbell v. Moulson, 53 N. Y., 225, 228.*) The improvements were permanent and lasting, and valuable to the estate, and if appellees failed to obtain full rents, there is no evidence of "fraud or willful default." *Story Eq. Jur., sec. 1237; Benedict v. Gilman, 4 Paige, 58; Bright v. Bond, 1 Story, 178; Wetmore v. Roberts, 10 How. Pr., 51; Nickles v. Dillaye, 17 N. Y., 80.*

Argues that as appellees believed they had purchased the land, the full amount of the debts purchased should be allowed. There was no relation of trustee. That relation can only arise, in cases like this, by contract. Appellant should not be allowed to profit by the mistake of appellee. She has largely profited by it, and to take advantage of it would be unfair and unjust, etc.

WILLIAMS, Sp. J.   Josephine Myrick filed her complaint in this cause in the Phillips Circuit Court in Chancery, in which she claimed that in the fall of 1877, through her husband as her agent, she had made a contract with Mrs. Jane A. Sutton for the purchase, by parol, from her, of a certain tract of land in Phillips County, described in the complaint, in consideration that she would pay three notes of Mrs. Sutton to Alcus, Scherk & Auty, for nine hundred and fifty-nine and four one-hundredth dollars each, all drawing six per cent. interest from January 7, 1875, to secure which they held a deed of trust on the land, and to pay a judgment in favor of same parties against her, rendered February 24, 1877, upon which a payment had been made by Mrs. Sutton of about $111.   Neither the rate of interest of this judgment nor the time of this payment is given ; but, as the testimony shows, it was paid by Myrick out of the proceeds of the sales of Mrs. Sutton's crop for 1876, and the Master, in his account, put it at a balance of $425.98, and the interest up to the time of making his report, about four years' interest only, at $92, we infer that the payment was about coeval with the judgment and that the rate of interest was six per cent.

The complaint states the further consideration of the payment by Myrick of a debt of S. J. Sutton, the deceased husband of defendant, Jane A., to C. S. and W. E. Moore, for $641.05, which she wanted paid to prevent an administration on her husband's estate.

That under this contract Myrick had taken possession of the land on the first day of January, 1878, and had demanded a deed of Mrs. Sutton, setting out in detail the manner and occasions of making such demand ; also states that the debts had been paid and assigned to plaintiff, and exhibited the claims, all, except the judgment.

The complaint also states that Mrs. Sutton, refusing to

make a deed, had rented the place to Hudson, one of the appellants, for 1880 and 1881, who was threatening to take possession, and was disturbing plaintiff's tenants and laborers on the land. Prayer for specific performance and temporary injunction.

The injunction was granted on the seventeenth day of January, 1880.

The defendant's answer, denying the contract of sale as stated in the complaint. Mrs. Sutton states that she employed Russell Myrick to pay the Alcus, Scherk & Auty debts, and agreed to let him have the land until the rent reimbursed him. She admits the renting to Hudson.

Voluminous depositions were taken in reference to the matter, very much of them irrelevant, as to loose declarations of parties. Before the hearing Russell Myrick was made a party plaintiff.

At the final hearing the court below rendered a decree dismissing so much of the complaint as prayed for a specific performance of a contract of sale, directing an account to be taken between plaintiff, and Mrs. Sutton, in which she should be charged with the indebtedness above stated, and lawful interest thereon, and credited with the rents received by plaintiffs, or such as they should reasonably have received, less all sums paid for such repairs as were necessary to keep the premises in tenantable condition, and all taxes paid upon the property by plaintiff. No direction was given the Master to calculate interest on the rents from the end of each year, or to credit them on the debt, and stop interest thereon, and the error was manifested in the Master's report, to which there were exceptions filed by the defendant, Jane A. Sutton. The court overruled the exceptions, but ordered the report to be remodeled so as to charge Mrs. Sutton with the sum actually paid by Myrick for the Moore debt, which Mrs.

Sutton admitted in her deposition that she directed Myrick to pay after she made the contract for the other debts. This debt of Moore the Master had allowed in full.

The court also referred it to the Master to determine and report upon the pleadings and evidence as to whether there had been any waste for which Myrick was responsible. The Master reported, making this correction in his first report. He also reported that there was no waste or disposition of timber for which Myrick was responsible. In this he is sustained by the testimony. The court decreed that plaintiffs, Josephine and Russell Myrick, recover from defendant Jane A. Sutton the sum of three thousand six hundred and fifty-eight dollars and seventy-four cents, the amount found due in the amended report, and declared that sum to be a lien on the land, and that the land should be sold. The injunction was made final against defendants, enjoining them from disturbing Myrick's possession. All the costs, except a portion adjudged against Hudson, were decreed against Mrs. Sutton.

In view of the fact that Myrick had made an unsuccessful effort at proving a contract of sale as to which his complaint had been dismissed, it would seem an abuse of that discretion which allows great latitude to a Chancellor in matters of costs, to tax the defendant with all this cost appertaining to the effort to prove a parol contract of sale.

It is now a well established rule that, when parties so far disregard the statute of frauds as to enter into parol contracts in violation of its letter, trusting to equity to protect and enforce their contracts, in order to prevent fraud, where they are partially performed, they must see to it that their contracts are clearly and conclusively proven; that they have been partially performed, and that the acts claimed to be in part performance are referable to the contract alone and were done under and in consequence of it. Otherwise, equity must deny relief.

1. Specific Performance:

Of parol contract. Evidence.

Sutton v. Myrick.

In this case the preponderance of proof shows that there was no sale intended. Myrick's own deposition and letters show this. The only real doubt which arises from the evidence is as to this, whether Myrick was to have a mortgage or a mere rent charge upon the land.

He says in his deposition that he took possession in January, 1878; that in January or February of that year, perhaps later, he asked Mrs. Sutton for a deed, which she refused to give. At that time it is doubtful from the testimony whether Myrick, who acted in this matter, he says, as agent for his wife from beginning to end, had paid all the said debts of Mrs. Sutton. The Moore debt, he says, was not paid until January or February.

In September, 1878, he wrote a note to Mrs. Sutton, asking for a deed for the land, expressing in it a fear that by the death of either of them the matter would be insecure and unsettled. In the note he proposes to allow her or her children to redeem at any time, and stated that he did not want the land. Here he asks for a mortgage (for a deed with right of redemption is nothing more), with indefinite right of redemption. Now it is evident that the real difference between these parties is this: One wanted a mortgage; the other intended and proposed rents, as security, and the possession was taken not in part performance of any definite contract, to which the two' minds had given assent, and to which the possession is referable, or of which it was a part performance, even if there could be a parol contract for a mortgage partly performed so as to take it out of the operation of the statute of frauds, which we doubt. Yet here it lacks that clear and conclusive proof which courts of equity require, as above indicated.

2. TRUSTEE: Liabilities. Compensation for time, trouble, etc      If Myrick attempted to make a contract in violation of a plain statute, he can not complain, if in the end he has to take less than he expected. The proof does not warrant

us in sustaining this decree against the body of the estate, when it appears to be but a charge upon the rents, and the court erred in directing a sale of the property, for that was to make a contract the parties did not make, or at least it is not proved. Myrick's own admissions, and all the proof discloses the fact that, at the time he purchased these debts, he occupied a trust relation to Mrs. Sutton, and was employed by and was acting for her. He was Mrs. Sutton's merchant. She went to him in her trouble, laid all her affairs before him and asked his assistance. He agreed to act for her in paying her debts, and reimburse himself out of her lands. He can not speculate off her. She is accountable to him for his actual outlays in the performance of the duty he assumed, and under the American rule, which is adopted in this State, a trustee is entitled to reasonable compensation for his time and trouble, and interest on outlays properly made. The rate of interest is by law but six per cent., but to include compensation, and for that purpose only, he should be allowed ten per cent. per annum on all his outlays in purchasing these debts and paying taxes, in full for his trouble and legal interest on the money.

The court below erred in its directions to the Master and in not sustaining the exceptions to the report as to allowance of items of outlay for purchase of these debts, and in decreeing a sale of the land, instead of appointing a receiver to collect the rents and pay the debts therefrom.

It appears here by the proof that there were 190 acres of land in cultivation. A very large preponderance of the proof shows that this land, which lies near Helena, was worth from six dollars to six dollars and fifty cents per acre, and that Myrick cultivated it for 1878, 1879 and 1880. Myrick swore before the Master that he made up his accounts partly from memory and partly from books, and states that

he only received about $700 per annum for two years, and $655 for one year. The Master almost literally copied Myrick's figures, differing only seventeen dollars in one year's rent, showing that he was controlled by the idea that Myrick was responsible only for the rent which he actually received and not for what the land was actually worth.

It will not do to establish the precedent that a trustee in possession who is a merchant, as Myrick was, selling supplies to his own tenants upon the faith of their crops, may rent at private letting for less than the market value, and collect what he could, for he might rent for a nominal rent and be thereby enabled to sell supplies at a higher price, to the prejudice of the *cestui que trust*, and really cause the rents to secretly disappear in overcharged supply bills. He could say to his tenant, I will rent Mrs. Sutton's land at half price, if you will buy my goods and give me my price; and it would be to the interest of the trustee, if allowed to prolong the day of redemption and eat up the profits, and make a mere rent charge practically a fee simple. Equity does not inquire whether a thing has been done, but if it may be, it removes the temptation. But besides, the proof shows that the land could have been rented each year, except a small portion of worn land, at from $5.50 to $6.50 per acre, and Myrick's own witnesses do not put it below $4.50 to $5.50. Unless Myrick had shown some better reason than simply that he rented some of the land lower, we can not excuse him from paying what the land was reasonably worth.

At $6 per acre it would bring $1,140 per annum. Allowing for the land that was thin and worn, $1,000 per annum for the rent of 1878 and 1879, is reasonable from the proof.

For 1880 Myrick must pay $1,140, for Mrs. Sutton had rented to Hudson for two years, at $6 per acre, and having

elected to enjoin him and keep the place, he can not visit the loss on Mrs. Sutton.

The decree is reversed and the clerk and Master of this court will re-state the accounts as follows:

Charge the defendant, Mrs. Sutton, with the amount paid for the Alcus, Scherk and Auty notes, $1,901.21.

Interest on same from December 1, 1877, until the time the report is made, at ten per cent. per annum.

With amount for the Moore debt, $500.

Interest thereon at ten per cent. per annum, from the first day of February, 1878, until time of making report.

Amount of remainder of the judgment in favor of Alcus, Scherk and Auty, $425.98.

Interest on same from February 24, 1877, until the report is made, at ten per cent. per annum.

After making these corrections and charges, the Master will allow the amounts of taxes paid each year, as allowed by the Master below, at page 184 of the transcript, adding to each item interest at ten per cent. per annum from the date of payment, until making report, as shown in the receipts, to wit: For tax 1877, from April 20, 1878; for tax of 1878, from April 16, 1879; for taxes of 1879, from April 19, 1880.

That he allow without interest all items for repairs, as allowed by the Master below; that as against this he credit Mrs. Sutton with rent for 1878, $1,000; rent for 1879, $1,000; rent for 1880, $1,140.

In making these credits, the Master is directed to calculate the interest on all items due before then, up to the first of January, 1879, and deduct the rents from the aggregate amount due Myrick, if the interest be by then one thousand dollars, and carry forward the balance at interest, so that on the first day of January of each year, the rents of the preceding year shall be credited to Mrs.

Sutton. He will strike a balance, and report so soon as these calculations can be made, upon which a decree will be rendered here and certified to the court below for execution, with directions to cause an account to be taken of the rents due from Myrick, if any, for 1881 and 1882, allowing him credit for taxes paid, and necessary repairs, and decree accordingly; and if, on such accounting, a remainder be found due Mrs. Sutton, that she have leave to file a supplemental cross-complaint for the same, and that it be decreed to her, and should a remainder be still found due Myrick, the court below is directed to appoint a receiver to take charge of and rent out the lands, until a sufficient sum shall be realized to pay the debt due.

Hon. W. W. Smith, J., did not sit in this case.