McKie v. McClanahan.

4-3628

Opinion delivered December 10, 1934.

C. Floyd Huff, Jr., and Jay M. Rowland, for appellant.

C. T. Cotham, for appellee.

McHaney, J. The appellant, J. S. McKie, brought suit in unlawful detainer against the appellees who were then in possession of the property involved, alleging that they were his tenants, and that they had refused to pay rent or surrender possession of the premises. An answer was filed by the appellees denying the allegations of the complaint, and alleging by way of cross-complaint an oral grant of the premises made by the appellant for a consideration which had been paid. There was a decree in favor of the appellees on their cross-complaint and adjudging specific performance of the oral contract.

On August 26, 1926, McKie purchased lots 1819, 1821, 1823, 1825, 1827 and 1829, Valley Street, in Hot Springs, Arkansas, at a commissioner's sale. At the time of the purchase there was a building on lot 1829 which was occupied by the McClanahans as tenants of a Mr. Spur-

lin, the former owner. The front part of the building was used by the McClanahans as a grocery store and the back room as their dwelling. There were a number of small rent houses on the other lots mentioned. The purchase price paid by McKie for all of this property was $1,800.

The appellees sought to establish their claim on an oral grant which they state occurred in the following way: When McKie purchased the property, he inquired of them what rent they had been paying Spurlin for the house they were occupying, and, on being told that it was $6 a month, McKie said they could continue to occupy the house at a rental of $8 a month which they might pay by furnishing him one meal a day; and that, if they would attend to the rental of the other small houses, when they had collected from the rents as much as $1,800, "we will be fifty-fifty in the property." This was the first agreement, which continued until November 20, 1926, at which time McKie changed it so as to require three meals a day for the rent. He ate the noon meal at their table and food for the other two meals would be placed in a basket by Mrs. McClanahan which McKie would eat away from the house. This was the second arrangement. Appellees stated that the contract was changed further by McKie in September, 1927, at which time they were notified by him that he was changing the deal again cutting out of the former agreement the three upper houses for the purpose of selling or renting them. Mrs. McClanahan testified: "At that time McKie stated: 'You can fix this house up to suit yourself—No. 829 and No. 827, Valley Street—but you will have to do your own repairing.' He said, 'Just fix it to suit your ownselves.' I (Mrs. McClanahan) said, Well, about the time we get it fixed we could live in it, you would take it away from us and put somebody else in it, and he said, 'No, that would never be done,' and relying on the old man's word, McKie furnished the shingles, and my husband shingled No. 829 and No. 827, Valley Street." Mr. McClanahan's version was practically identical with that of Mrs. McClanahan. After having detailed the different agreements preceding the last, his statement regard-

ing this last agreement is as follows: "And he (McKie) said, 'I want to change the first deal I made with you people. We will cut out these three upper houses and we will sell them or we will rent them—these two, 827 and 829—will be kept here for you people.' He said, 'But you will have to do your own repair work.' Well, he furnished me the shingles, and I shingled 829 and then I shingled 827." McClanahan further testified as to various repairs he made upon the buildings from time to time, which he estimated amounted to $165.

The McClanahans occupied the store building from the time of McKie's purchase in 1926 until some time in March, 1932, furnishing McKie three meals a day from November, 1926. In March of 1932 some disagreement arose after which McKie no longer got his meals at the McClanahans and shortly thereafter he demanded possession, which being refused, this suit followed.

McKie, testifying as to the arrangement under which the McClanahans occupied the property, stated that they were to give him his meals, keep the houses in repair and collect the rent from the other houses for their rent; that this was the only arrangement that was ever made; and that it continued until the McClanahans refused to furnish him any more meals and declined to move from the property.

During all this time the McClanahans rented the small houses and turned the rent over to McKie, which they testified amounted to about $1,700; that they sold one lot for $500 and gave all of this to McKie. He, however, disputes this, saying that he received $450 and they were given $50 for selling the property. It is undisputed that, ever since McKie purchased the property in 1926, he paid the taxes each year and the insurance on the property.

In support of the decree appellees contend that the evidence is sufficient to establish a valid contract founded upon a valuable consideration, and that the statute of frauds invoked by the appellant has no application, for the reason that the appellees took possession under the parol grant and made valuable improvements on the faith of said grant.

The rule is well settled that, before a court of equity may grant specific performance of a parol contract to convey land, the evidence of such agreement must be clear, satisfactory and convincing. *Sutton* v. *Meyer,* 39 Ark. 424; *Meigs* v. *Morris,* 63 Ark. 100, 37 S. W. 302; *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82; *Walk* v. *Barrett,* 177 Ark. 265, 6 S. W. (2d) 310.

It is also well settled that, while delivery of possession under a parol contract of purchase takes the case out of the statute of frauds, such possession must be taken pursuant to the contract; and where the alleged grantee is already in possession as tenant and merely continues therein after making the contract, possession alone is not sufficient to take the case out of the operation of the statute. *Central Bank* v. *Downtain,* 162 Ark. 46, 257 S. W. 746, and cases therein cited.

Applying these rules to the case at bar, it is our opinion that the evidence falls short of the weight sufficient to establish the contract as contended by the appellees. Their own evidence, which we have quoted, fails to show any definite contract. They rely on the last agreement made during the time they were paying their rent by giving McKie three meals a day, which goes no further than to give the McClanahans the assurance that if they would repair the buildings McKie would not sell them. Of course, if Nos. 827 and 829, Valley Street, became the property of the McClanahans under the last agreement, there would have been no necessity for the requirement that they do their own repairing, and, if it had become their property by this agreement (which they say was made in September, 1927), it is reasonable that from time to time they would have paid the taxes and kept up the insurance on the property. They, however, did none of these things, and from their own evidence it appears that McKie was furnishing material for part of the repair work made after the last alleged agreement. From the evidence there is no doubt that the possession was not taken pursuant to the alleged contract, but that they were already in possession as tenants when McKie made his purchase, and merely continued in possession thereafter.

In the cross-complaint the appellees claimed a large amount for meals they furnished McKie during a period of more than five years, but the chancellor rightly ignored this claim, as these meals were in payment of the rent.

From the views expressed it follows that the decree of the trial court adjudging specific performance must be reversed, and the cause is remanded with directions to dismiss the cross-complaint for want of equity and to award possession of the property to the appellant, as prayed in his complaint.