**JOHNSON et al. v. MOSLEY.**

No. 13965.

United States Court of Appeals Eighth Circuit.

Jan. 26, 1950.

Rehearing Denied March 7, 1950.

Harry C. Blanton, Sikeston, Mo. (H. M. Cooley, Jonesboro, Ark., and Harry Ponder, Jr., Walnut Ridge, Ark., were with him on the brief), for appellants.

Joe C. Barrett and Archer Wheatley, Jonesboro, Ark. (Berl S. Smith, Jonesboro, Ark., was with them on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the defendants in the district court from a judgment for the plaintiff Mosley, granting specific performance of an alleged contract for the purchase of 120 acres of land in Craighead County, Arkansas.

The issues in the trial court are stated in a complaint in equity demanding an accounting and specific performance of a contract, an answer and cross-complaint and an answer to the cross-complaint.

In his complaint Mosley alleged that prior to April 1, 1930, one W. E. Yount was the owner of the land, title to which is involved in this controversy; that the land was then covered with cut-over timber and had no improvements thereon; that at that time a contract was entered into between Mosley and Yount whereby Yount sold the land to Mosley for a consideration of $65 per acre, $100 of the purchase price being then paid in cash and the remainder of the purchase price to be paid when the land had been cleared and put in cultivation at the rate of one-fourth of the cotton and one-third of the corn raised on the land.

That Mosley entered into possession, cleared the land and constructed buildings thereon and made other improvements so that the farm was worth in 1948 at least $200 an acre.

That at the time the contract was entered into Yount owned 960 acres, including the land involved herein, all covered by mortgages and drainage taxes, making it burdensome, so that on December 3, 1931, Yount conveyed the entire tract to the defendant C. A. Vandivort for a recited consideration of one dollar.

That at the time Vandivort acquired said deed he was advised of the contract between Mosley and Yount; that thereafter Vandivort called on Mosley and orally agreed that when the mortgages had been paid he would execute a deed conveying a good title to Mosley pursuant to the contract between Mosley and Yount, and that in the meantime Mosley should continue in possession and make annual payments on the purchase price equal to 1/4 of the cotton and 1/3 of the corn grown thereon out of which Vandivort would pay the taxes and the remainder would be credited on the purchase price. That many times thereafter Mosley demanded a settlement and a deed; that on each occasion Vandivort said the mortgages had not been paid and that he would execute a deed as soon as he was able to do so. That all the incumbrances on the land have been discharged and that all the representations made by Vandivort were false and fraudulent.

That on December 29, 1942, C. A. Vandivort had conveyed all of said 960 acre tract of land to his children, the other defendants, without consideration.

That subsequent to the execution of a deed from Vandivort to his children Mosley demanded a settlement and deed and his right to receive a deed has never been questioned.

That immediately following the deed from Yount to Vandivort the latter appointed one G. M. Boydstun his agent and attorney in fact to handle all of said land;

that as such agent Boydstun with full knowledge and authority of Vandivort entered into a contract with Mosley on January 1, 1933, agreeing that if the contract between Mosley and Yount continued in effect the rents paid on the land involved should be applied on the contract between Mosley and Yount, and that said contract did remain in full force and effect with full performance thereon by Mosley.

That the contract between Mosley and Yount had been lost, but that it was similar to a contract between Yount and one Wallace dated December 28, 1929, covering other land, except that the contract between Mosley and Yount provided that in the event Yount was unable to perform his contract and convey a good title Mosley should be paid for all improvements made by him on the land. A copy of the Wallace contract was annexed to the complaint.

That Vandivort took title to the tract of land from Yount subject to Mosley's rights under the contract between him and Yount and with the agreement that he would take the place of Yount and perform the same.

Mosley prayed for an accounting to determine the amount of his payments as rentals to be applied as a part of the purchase price and to determine the unpaid balance, if any, and for specific performance.

In their answer defendants admitted that Yount formerly owned the tract of 960 acres of land referred to by plaintiff Mosley, but that if Yount did enter into a contract with Mosley it was provided therein that in case he, Yount, was unable to convey a merchantable title, Mosley was to pay rent and the contract should be of no force and effect. That Yount was unable to furnish a good title and that, therefore, the contract became null and void. They admitted that C. A. Vandivort purchased the land and denied that Vandivort made any agreement with Mosley that he should clear the land and that Vandivort would pay him therefor; they denied that Vandivort ever agreed or promised that he would convey said land to Mosley at any time or that he would credit rentals paid on the purchase price. They admitted that Vandivort appointed Boydstun as his agent to rent the land and collect the rentals and denied that he was authorized to enter into a contract of sale without Vandivort's approval. They aver that since Vandivort and his grantees came into possession of the land Mosley has held the land only as a tenant and that he has recognized them as his landlords. And they plead estoppel, laches and limitations.

In their cross-complaint defendants asked that plaintiff be required to deliver immediate possession of the land to them. Plaintiff in his answer thereto denied the allegations of the cross-complaint.

The court, after hearing the evidence, made findings of fact and conclusions of law favorable to the plaintiff and entered judgment requiring plaintiff to pay a balance of $2321.11 to defendants and vesting title to the land in plaintiff Mosley.

On this appeal the defendants contend that the court committed reversible error in the admission of evidence and in the findings and judgment for the plaintiff rather than in their favor.

On the trial in the district court Mosley testified that he purchased the 120 acres of land involved from Dr. Yount; that his copy of the contract was lost; that it provided that he was to pay $65 an acre for the land, $100 down and that "I was to pay Dr. Yount along until I could get the land where * * * he would make me a deed. And Mr. Vandivort, he came along then in 1931, I believe it was, and come down the field where I was clearing and said he bought Dr. Yount out and was going to take up from there. I told him, 'Mr. Vandivort, I don't see hardly how I can go ahead and clear this land and make those payments.' He said, 'I am going to do this with you boys. Go ahead and clear your land and I will let you pay me third and fourth payments and I will apply it on your payments, * * * and when I get it down to where I can make a deed, why you will have it near enough where you can borrow the money on it and finish paying it out * * *.' I asked him about this contract. He told me I didn't need no contract, that he was taking up Dr. Yount's contract * * * I asked him about a deed every time he was down. He said

he couldn't do it * * * the land was still tied up and he kept arguing that way until '46."

Vandivort testified that he never had such a conversation with Mosley or that he ever received the contract between Yount and Mosley. His contention was that Mosley, as between them, was only a tenant. A Mr. Cooley, testifying for the defendants, said that he had been Dr. Yount's attorney in 1930 and in 1931 when these transactions occurred. He had in his possession and produced in evidence Dr. Yount's copy of the contract with Mosley dated February 5, 1930. It provided for the sale of the land involved to Mosley for $7,800, $1000 of which was payable on or before November 15, 1930, $3000 to be borrowed on a mortgage on the land and paid to Yount, and the remainder of the purchase price was payable in five equal installments of $750 each on November 15, 1931, 1932, 1933, 1934, and 1935. The contract concluded:

"Said First party agrees that in event he should not be able to deliver title to Second Party as agreed, then that he will pay to Second Party the value of all buildings and improvements placed thereon by him."

It will be observed that the contract differed materially from Mosley's claim.

While Dr. Yount owned the 960 acre tract of land he had rented parcels of it to various persons and the deed to Vandivort provided:

"For the consideration aforesaid, I do also hereby assign, transfer and convey to said C. A. Vandivort all rents of all kinds against all tenants on all crops grown or to be grown on said land in 1931 and hereafter, and the grantee herein is hereby authorized to collect, receive and hold such rent."

The deed from Yount to Vandivort for the 960 acre tract of land was subject to liens aggregating $48,000, all of which were satisfied or removed by Vandivort at an expense of $26,700.

When Vandivort acquired title he employed Mr. C. M. Boydstun as his agent, giving a letter of authority as follows:

"September 1st, 1931
"To Whom It May Concern:

"This is to notify interested parties that I have bought the Dr. W. E. Yount farm and have appointed Mr. C. M. Boydstun as my agent in charge of the property.

"He has authority to collect all rents and payments due or past due the land owner, and to give proper receipt for same.

"Yours truly,
"C. A. Vandivort,
"President."

On January 1, 1933, Boydstun and Mosley met in the office of Attorney Cooley (referred to above) when an instrument entitled "Supplemental Contract" was executed. This instrument is a lease for the land involved for the year 1933 from Vandivort to Mosley. It contains the following paragraph: "Said second party has a contract of purchase with W. E. Yount which has been purchased by said C. A. Vandivort, said contract being of date April 1st, 1930, and it is agreed between said parties that if said contract last named remains in force and effect, that then all rentals on the lands described in said contract paid under this contract shall be credited on the indebtedness or amount due thereunder, leaving the balance due as called for in said contract" (which would be November 15, 1935). And it was signed:

"Witness our hands to duplicate contracts the day and year above written.
"C. A. Vandivort,
"/s/ C. M. Boydstun, Agent,
"Grantee in Succession to
W. E. Yount, First party,
"/s/ J. M. Mosley, Second
party."

This instrument was offered in evidence by counsel for Mosley to which offer the following objection and ruling thereon were made:

"Mr. Blanton: To which offer defendants object for the reason there is no showing in any of that for Mr. Boydstun to act as agent for Mr. Vandivort in the execution of that contract, and the testimony

shows he was an agent for renting of the land as far as Vandivort is concerned.

"The Court. Objection overruled."

For the purpose of showing Boydstun's authority for including the foregoing clause in the so-called Supplemental Contract of January 1, 1933, supra, Mosley relied upon a contract entered into between C. A. Vandivort and Boydstun and Cooley on June 19, 1934, providing that Boydstun should act as Vandivort's agent for the sale of all the lands purchased by Vandivort from Yount and fixing his commission for such service and for the "handling of said lands, all subject to the approval of said C. A. Vandivort." This contract provided, also, that "It is agreed that all contracts heretofore entered into with the men now on said lands shall be carried out as near as possible between said parties and in the manner as said second parties [Boydstun and Cooley] may deem proper and equitable in connection with said contracts."

Boydstun testified that the Supplemental Contract of January 1, 1933, upon which Mosley places such great reliance, was prepared by him and that the purchase clause quoted above was inserted at the request of Mosley and that he told Mosley the rent contract was all right; that he had authority to sign that "but the purchase contract—the extension of it—was not worth two cents unless Vandivort approved it, and it was up to him to get the approval." Boydstun further testified that it passed out of his mind then; that he had never mentioned it to Vandivort; and Vandivort testified that he never heard of such contract until after this litigation began.

W. E. Yount, from whom Vandivort acquired the land involved in this controversy, was a resident of Cape Girardeau in southeastern Missouri. On August 7, 1933, he filed a voluntary petition in bankruptcy in the Eastern District of Missouri, in which he listed among his assets the 960 acres of land, with the following "Note: About two years ago, the above real estate was conveyed to Clyde Vandivort and he was to negotiate a sale for the purpose of paying all that was against the land and the residue was to be turned over to me. Note:

The records in Craighead County, Arkansas, show that the Deeds of Trust on Schedule A-2 are against the above described real estate and are not satisfied." Mosley was not listed as a creditor and had no notice of the bankruptcy proceeding.

The record discloses also that during the years after Vandivort acquired title to the land Mosley executed written leases for the 120 acres involved with no reference to the alleged oral contract to purchase. Many letters from Mosley to Vandivort during the period were introduced in evidence, not one of which referred to the alleged contract of purchase. Mosley, also, admitted that during the period from 1932 to 1948 Vandivort paid the taxes and special assessments on the land. When improvements were made Vandivort paid for the material and Mosley furnished the labor. Vandivort carried insurance on the buildings at all times. Mosley never made any of the payments provided for in his contract with Yount except the $100 paid in 1930.

On July 13, 1934, Mosley gave a statement to the Agricultural Adjustment Administration of the United States Department of Agriculture stating that he rented land from Vandivort; that the landlord pays for the major repairs on the place, and that he had reduced the cotton acreage in accordance with the rental contract that had been made; and on July 23, 1934, he signed a tenant agreement which provided that Vandivort's tenants should be paid 50% of the government rentals on the reduced cotton acreage of each tenant.

In connection with the settlement of the division of government rentals for reduced cotton acreage Mosley and three of his cotenants testified that prior to arriving at an agreement Vandivort met with them and that the landlord and the tenants each wanted all of such rentals, and that Vandivort said that he would take 50% of the rentals and give them credit for the entire amounts on their respective purchase contracts, all of which Vandivort denied.

As late as November 1, 1943, Mosley signed a written lease for the year 1944 agreeing to pay as rental ¼ of the cotton

and ⅓ of the corn grown on the farm and $7.50 per acre for the pasture land. The landlord agreed to pay for ¼ of the fertilizer. The lease also provided that "should the said tenant fail to prepare the soil, plant the crops, or cultivate, harvest or market them in due season, then the said landlord may at his option terminate said lease, take possession and finish the crops * * *." Nothing was said in the lease about a purchase contract.

One other item of evidence is pressed by Mosley with emphasis. In 1947 Paul M. Vandivort, one of the defendants, a son of C. A. Vandivort, acted as agent for the owners in renting their land and collecting the rents. He called at the Mosleys four times during that summer. Mosley and his wife testified that on one of these visits they asked about a deed for the farm and that Paul told them they would not give a deed; that after some discussion an agreement was reached to the effect that the defendants would pay Mosley $6,000 and he would surrender the premises. They testified that when Paul returned later he repudiated the oral agreement and refused to pay them anything. Paul Vandivort testified that no such conversations were ever had between him and the Mosleys.

The trial court made the following pertinent findings of fact:

"1. On February 5, 1930, W. E. Yount was the owner of the land in suit and contracted with plaintiff to sell it to him for $7,800.00, upon annual payments.

"2. Plaintiff entered into possession and began clearing and improving the land.

"3. On September 3, 1931, W. E. Yount conveyed his interest in this and other lands to C. A. Vandivort for a consideration of one dollar.

* * * * * *

"5. Thereafter by oral agreement the contract was modified to provide that plaintiff would continue under his contract of purchase to clear the land and place improvements thereon, and Vandivort would pay taxes and for materials for improving the land, charge to the account of the plaintiff and the plaintiff would pay to Vandivort ⅓ and ¼ of the crops as a credit against the purchase price of the land and charges for taxes and materials.

"6. C. M. Boydstun, C. A. Vandivort's duly appointed agent, acting within the scope of his authority, executed a contract in the name of his principal on January 1, 1933, in which it was provided that plaintiff held the contract of purchase, and if it continued in force, any rent payments under the contract of January 1, 1933, would be applied on the purchase price under the contract. The contract did continue in effect and in force.

"7. C. A. Vandivort in 1934 agreed with the plaintiff for a division of the payments under the Government's farm program, and agreed that the portions of the payments received by C. A. Vandivort would be applied by him as credits on the purchase price, taxes and cost of materials furnished by him for improvements.

* * * * * *

"11. During the year 1947 Paul Vandivort, one of the defendants and agent for all defendants, acknowledged the existence of the contract and obligation thereunder to convey to the plaintiff, and offered to settle the claim of the defendant to the land for $6,000, which was not paid. This was not an offer in compromise but an acknowledgment of the contract."

And the following conclusions of law:

"1. The contract between the plaintiff and W. E. Yount for the purchase of the land by plaintiff was a valid and enforceable contract.

* * * * * *

"3. The agreement between the plaintiff and C. A. Vandivort for modification of the method and basis of payment for the land is legal, and is binding upon all the defendants herein.

"4. The contract of January 1, 1933, executed by C. M. Boydstun, as agent for C. A. Vandivort, was within the scope of his authority, was binding upon C. A. Vandivort, and those in privity with him, and is a confirmation of the oral agreement between C. A. Vandivort and the plaintiff which amended the purchase contract.

"5. The designation of the plaintiff as a tenant in the agreements with the Government for payments for participation under the governmental programs, did not evidence an abrogation or abandonment of the purchase contract, but was in line with and carried out the provisions of that contract."

The ultimate question for determination is whether the court erred in finding and holding that Mosley was in possession of the land involved from 1931 to 1948 as a purchaser, as claimed by Mosley, or as a tenant, as claimed by the defendants.

The court found, it will be observed, that Mosley had possession under a contract of purchase which evolved in three steps: first, there was a written contract of purchase between Yount and Mosley dated February 5, 1930; second, that when Yount conveyed to Vandivort on September 3, 1931, Vandivort took over the seller's contract modified orally only in respect of the payments to be made on the purchase price; and, third, that said oral agreement was further modified and confirmed by the supplemental contract of January 1, 1933, executed on behalf of Vandivort by his authorized agent, Boydstun.

The court, also, found that the existence of the contract between Mosley and Vandivort was acknowledged by the defendant Paul Vandivort in 1947 after C. A. Vandivort had conveyed the land to his children.

The alleged contract of purchase sought to be enforced is an Arkansas contract and the rights of the parties thereunder are governed by the substantive law of Arkansas. The law is that "An agreement, when changed by the mutual consent of the parties, becomes a new agreement, which takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged; in other words, a contract may be abrogated in part and stand as to the residue. The new contract supersedes the first to the extent that the two will be unable to stand together. Where a written contract is modified verbally, the entire contract becomes an oral one." 17 C.J.S., Contracts, § 379, p. 869; Webb v. Cobb, 172 Ark. 255, 288 S.W. 897.

The rule that possession by a person under a contract of purchase is notice of his equitable rights is not applicable when the purchaser was in possession when his oral contract of purchase was made. Central Bank of Little Rock et al. v. Downtain, 162 Ark. 46, 257 S.W. 746.

"The rule is well settled that before a court of equity may grant specific performance of a parol contract to convey land, the evidence of such agreement must be clear, satisfactory, and convincing. * * * and where the alleged grantee is already in possession as tenant and merely continues therein after making the contract, that possession alone is not sufficient to take the case out of the operation of the statute [of frauds]." McKie v. McClanahan et al., 190 Ark. 41, 76 S.W. 2d 971, 972 (citations).

And, as said by the Supreme Court of Arkansas in Engleman, Inc., v. Briscoe, 172 Ark. 1088, 291 S.W. 795, 797, "Of course, the burden of proof is upon the party relying upon the new contract to prove its terms." And see, Cook v. Cave, 163 Ark. 407, 260 S.W. 49; Vogler v. Dyer, 149 Ark. 670, 234 S.W. 504. That is, in this case, the plaintiff must prove its terms by competent, substantial evidence—evidence which is "clear, satisfactory, and convincing", McKie v. McClanahan, supra; for what constitutes substantial evidence is determinable by law of the state. Roth v. Swanson, 8 Cir., 145 F.2d 262, 265. Substantial evidence in any case "is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126.

Counsel for the parties have discussed first the admission in evidence over defendants' objection of the "Supplemental Contract" of January 1, 1933. Its admission was objected to on the ground

that there was no showing that Boydstun had authority to execute the contract as agent of Vandivort. We think the court erred in overruling the objection. It is the rule that "A party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it." The burden is on such party to prove the agent had authority to make the particular contract which in fact was made, "not to make contracts generally * * *." Schutz v. Jordan, 141 U.S. 213, 218, 11 S. Ct. 906, 907, 35 L.Ed. 705; Ferro Concrete Const. Co. v. United States, 1 Cir., 112 F.2d 488, 491; Vogler v. Dyer, 149 Ark. 670, 234 S.W. 504, 505.

The plaintiff argues that Boydstun had apparent authority to execute the contract, and anyway it was not a contract but a declaration of an existing fact, citing General Motors Acceptance Corp. v. Salter, 172 Ark. 691, 290 S.W. 584; and Ozark Mut. Life Ass'n v. Dillard, 169 Ark. 136, 273 S.W. 378. These cases are not in point. The clause here in question is contractual in form and was inserted in a lease. Boydstun had express authority to execute leases for Vandivort and to collect rentals, but the documents relied upon to show his authority to enter into contracts for the sale of land provide expressly that prior approval of Vandivort was required; and the evidence is undisputed that Vandivort had neither approved nor authorized the clause relied upon by Mosley.

Further, the clause in said lease or supplemental contract relied upon by Mosley supports Boydstun's testimony to the effect that he inserted the clause at the request of Mosley without personal knowledge of the facts. This clause refers to the contract between Mosley and Yount as of April 1, 1930, the same date assigned to it in Mosley's complaint, whereas the proof showed and the court found that the contract was dated February 5, 1930. Again, the clause relied upon reads in part: "and it is agreed between the parties that *if said contract last named remains in force and effect,* that then all rentals on the lands described in said contract *paid under this contract* shall be credited on the indebtedness or amount due thereunder * * *." (Emphasis supplied.) Had Vandivort authorized the insertion of this clause in a lease, and had he at that time an oral contract with Mosley to credit all rentals on the purchase price he would have known whether the Yount contract was still in force and effect, and the credits for rentals would not have been limited to rentals under a lease terminating in 1933.

Mosley contends further that by the contract of June 19, 1934, Vandivort ratified and confirmed the provision in the supplemental contract of January 1, 1933, now under consideration. The contract of June 19, 1934, was between C. A. Vandivort of the first part and Boydstun and Cooley of the second part. It referred to the purchase by Vandivort from Yount of the 960 acre tract of land in Craighead County, Arkansas, and recited that the second parties had on December 20, 1929, entered into a contract with Yount "pertaining to the sale of said lands and under said contract, contracts of sale were made for a part of the same." It was then stated that "it was desired that second parties should continue their efforts to a final conclusion of sale of all of said lands * * *." Compensation for their services was then provided for after which it was recited that Boydstun should "serve as a real estate agent in making sales of the remainder of said lands * * * all subject to the approval of said C. A. Vandivort." It was further provided that "all contracts heretofore entered into with the men now on said lands shall be carried out as near as possible between said parties and in the manner as said first and second parties may deem proper and equitable in connection with said contracts." No reference is made to Yount's contract with Mosley, and there is no reference to the supplemental contract of January 1, 1933, supra. The undisputed testimony is to the effect that on June 19, 1934, Vandivort knew nothing about the supplemental contract. It is elementary that "in order that a ratification of an unauthorized act * * of an agent may be valid and binding, it is essential that the principal have full knowl-

582

edge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act * * *." 2 C.J., Agency, § 93, page 476; 2 C.J.S., Agency, § 42. McCaroll Agency v. Protectory for Boys, etc., 197 Ark. 534, 124 S.W.2d 816, 819; American Southern Trust Co. v. McKee, 173 Ark. 147, 293 S.W. 50; Spann v. Commercial Standard Ins. Co. of Dallas, Texas, 8 Cir., 82 F.2d 593. The contract of June 19, 1934, meant only what it clearly said, and it cannot be considered a ratification of any previous act not referred to therein. That contract specifically required any contracts made by Boydstun to be approved by Vandivort. It cannot in fact be said that the evidence supports a finding that Boydstun ever assumed to act beyond the scope of his authority.

■ Other minor and subsidiary contentions of the parties are discussed at length in the briefs, all of which we have carefully considered. We think it unnecessary to extend this opinion with a discussion of such points because we have reached the conclusion that the court erred in finding and holding that Mosley and Vandivort entered into a contract of sale and purchase of the land involved herein. Mosley was a tenant only at all times after Vandivort acquired title to the premises. It is true that the court's findings are supported by the oral testimony of Mosley and inferentially by the oral testimony of other witnesses. On the other hand, all of such testimony is unequivocally denied and the denials are supported by other weighty circumstances. Mosley signed written leases and paid rent and accepted written receipts therefor as such. He signed written statements and contracts for a governmental agency, averring that he was a tenant. The findings are not based upon substantial, competent evidence. We are convinced a clear mistake has been made. United States v. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. '525, 92 L.Ed 746.

The judgment appealed from is accordingly reversed with instructions to enter judgment for the defendants.