791 F.2d 935
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SCOT LAD FOODS, INC., a Delaware corporation and its
subsidiary corporations, LAKE END SALES, INC.; CUSTOM
MERCHANDISERS, INC., EVANSVILLE FOOD DISTRIBUTORS, INC.,
GARDEN CITY FOODS, INC., and REDT-FROZ, INC., Plaintiffs-Appellees,
v.
AMES FOOD MARKET, INC.; KENNETH C. AMES, Individually and as
President of AMES FOOD MARKET, INC.; BETTY E. AMES,
Individually and as Secretary of AMES FOOD MARKET, INC.;
CHARLES L. AMES, and THERESA AMES, Jointly and Severally,
Defendants-Appellants.
 85-1203
 United States Court of Appeals, Sixth Circuit.
 4/7/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: ENGEL, CONTIE and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Ames Food Market, Inc., et al. ('Ames') appeal the jury verdict for plaintiffs Scot Lad Foods, Inc., et al. ('Scot Lad') in this diversity action to collect on a judgment. Finding no reversible errors by the district court, we affirm.
 
 I.
 
 2
 Scot Lad is a Delaware corporation engaged in the sale of groceries wholesale. In July, 1977, Ames began purchasing groceries from Scot Lad for resale and gave Scot Lad a security interest in its inventory. Ames also obtained equipment from Scot Lad pursuant to a five-year lease. After rectifying arrears in its payments to Scot Lad for purchased groceries in March, 1978, Ames became delinguent to Scot Lad under the equipment lease.
 
 
 3
 Thereafter, the parties entered into an agreement for the entry of a consent judgment in which Ames acknowledged that its payments were delinguent and agreed to accelerate payments such that the total amount due under the lease, $142,150.12, would be paid in just over two years. Ames also agreed to maintain specified minimum inventory levels in order to secure the debt. The consent judgment agreement specifically provided that the agreement did not supercede the prior security agreement, and, further, Scot Lad had the right to enforce the judgment 'in any lawful manner' upon Ames' default.
 
 
 4
 Although originally presented in a different form to the district court for entry on or about May 25, 1979, the judge refused to enter the proposed judgment at that time because a representative of Ames was not present. On June 21, 1979, the revised consent judgment agreed to by the parties was approved by the district court, and on June 25, 1979, the clerk entered the judgment.
 
 
 5
 In the meantime, having discovered that Ames' inventories had fallen significantly below the required minimum levels, Scot Lad filed an affidavit of default with the court on June 25, 1979, under the consent judgment and secured a Writ of Execution. Later that day, Scot Lad agents, accompanied by sheriff's deputies, entered Ames' stores and seized its inventory which was subsequently sold.
 
 
 6
 Thereafter, Scot Lad brought this action seeking as damages the unsatisfied portion of the consent judgment. Ames raised verious counterclaims including breach of contract, malicious prosecution, and tortious interference with a business relationship. At the conclusion of a ten-day trial, the jury returned a verdict of $71,096.44 in favor of Scott Lad and recommended a verdict of no cause of action on Ames' counterclaims. Judgment was entered on the basis of the jury's verdict and recommendation.
 
 II.
 
 7
 Ames first argues that the district court erred in refusing to instruct the jury that execution by Scot Lad less than ten days after entry of the consent judgment was unlawful as a matter of law under Federal Rule of Civil Procedure 62(a). Rule 62(a) provides:
 
 
 8
 Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.
 
 
 9
 'Judgment' for purposes of the federal rules is defined to include 'a decree and any order from which an appeal lies.' Fed. R. Civ. P. 54(a). Scot Lad argues the district court correctly held Rule 62(a) inapplicable to the instant case because consent judgments are not appealable. We disagree.
 
 
 10
 In Swift & Company v. United States, 276 U.S. 311, 324, 48 S. Ct. 311, 314 (1928), the Supreme Court stated:
 
 
 11
 Decrees entered by consent have been reviewed upon appeal or bill of review where there was a claim of lack of actual consent to the decree as entered . . .; or fraud in its procurement . . .; or that there was lack of federal jurisdiction because of the citizenship of the parties. . . . But 'a decree, which appears by the record to have been rendered by consent, is always affirmed, without considering the merits of the cause.' (citations omitted; emphasis supplied).
 
 
 12
 Thus, although the review of a consent judgment is severely limited, such a judgment is, in fact, appealable. Accordingly, Rule 62(a) is applicable. This conclusion furthers the purposes of Rule 62(a), which is to allow the party against whom the judgment is entered to either attack the judgment in the trial court or seek a stay pending appeal. See C. Wright and A. Miller, Federal Practice & Procedure, Sec.2902 (1973). A party against whom a consent judgment is entered is entitled to the protections of Rule 62(a).
 
 
 13
 Any error in this regard, however, is harmless. Ames has never claimed the consent judgment was invalid due to lack of consent, fraud, or lack of federal jurisdiction. Moreover, Ames has set forth no credible argument that it was injured in any manner designed to be protected by Rule 62(a) by the loss of the ten-day automatic stay. Therefore, the jury could not have awarded Ames any damages on this basis. Accordingly, the failure to give the proffered instruction was harmless. See C. Wright and A. Miller, supra, at Sec.2886.
 
 
 14
 Ames next argues that the default affidavit filed by Scot Lad was insufficient as a matter of law because it did not provide the court with a proper factual basis for issuing the writ of execution. Federal Rule of Civil Procedure 69(a) provides that the procedure 'in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is hel , . . .' Ames concedes the relevant Michigan statutory provisions do not reguire that an affidavit be filed prior to execution. Hence, the affidavit was required only because the parties so stipulated in the consent judgment.
 
 
 15
 The consent judgment did not require the affidavit to set forth the specific values placed on the inventory levels in Ames' stores. Rather, Scot Lad was required to file 'an affidavit of facts showing such default.' Having reviewed the language of the consent judgment together with the substance of the default affidavit, we hold that the district court did not err in refusing to instruct the jury that the execution was unlawful as a matter of law because the affidavit was insufficient.
 
 
 16
 Ames' third argument is that the district court erred in instructing the jury that it should find for Scot Lad if it determined that Scot Lad proceeded lawfully under the terms of the security agreement. In this connection, Ames first argues the consent judgment superceded the security agreement. The cases relied on by Ames refer to the general contract rule that the intent of the parties controls. See, e.g., Johnson v. Mosley, 179 F.2d 573, 580 (8th Cir. 1950) ('The law is that 'An agreement,' when changed by the mutual consent of the parties, . . .'). In the instant case, the intent of the parties, as expressly set forth in the consent judgment, was that the consent judgment 'shall not supercede any . . . security agreement.'
 
 
 17
 Ames argues this instruction was in error because Scot Lad produced no evidence that it was proceeding under the terms of the security agreement rather than the consent judgment when it seized Ames' property. However, Edward L. Beatty, Comptroller of Scot Lad, testified that Scot Lad was enforcing and relying on the terms of the security agreement as well as the consent judgment. App. at 433. Marvin Shore, corporate counsel for Scot Lad, also testified that Scot Lad was relying on and executing on the security agreement as well as the consent judgment. App. at 505.
 
 
 18
 Ames further argues that evidence was presented at trial which demonstrates that Scot Lad was not, in fact, acting under the security agreement when it seized Ames' property. However, as set forth above, evidence was also presented to support the tendered instruction. Accordingly, the issue was for the jury to decide, and the court did not err in giving the disputed instruction. See Smith-Douglass v. Walch, 391 Mich. 201, 203, 215 N.W.2d 142, 143 (1974) ('Each party's theory of the case must be presented to the jury if there is evidence to support it.').
 
 
 19
 Ames next contends that the district court erred in admitting evidence of defaults by Ames on obligations to creditors other than Scot Lad. Questions of relevance and the prejudicial effect of evidence are left to the sound discretion of the trial court under Federal Rules of Evidence 402 and 403. See United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979); Geisler v. Folsom, 735 F.2d 991, 997 (6th Cir. 1984). The evidence regarding Ames' defaults, of which Scot Lad was aware, is relevant to show the circumstances under which Scot Lad acted. Moreover, any potential for unfair prejudice was outweighed by its probative value. Accordingly, there was no error in this regard.
 
 
 20
 Finally, there is no merit to Ames' contention that it should have been allowed to argue as a basis for waiver events which took place after May 25, 1979, the date of the first proposed consent judgment agreement and prior to June 21, 1979, the date of the signing of the consent judgment actually entered. The relevant and enforceable consent judgment was that of June 21, 1979. Scot Lad, therefore, could not be held to have waived the terms of that judgment by any acts occurring prior to that date.
 
 III.
 
 21
 Accordingly, the decision of the district court is AFFIRMED.